COMMONWEALTH vs. ROBERT DUPREE.

Suffolk.   May 16, 1983. — September 2, 1983.

Present: BROWN, PERRETTA, & KASS, JJ.

*Practice, Criminal,* Opening statement by defense, Sentence.  *Due Process of Law,* Vagueness of statute.

Reversal of a criminal conviction was required where defense counsel stated his intention to make an opening statement following the prosecutor's opening and the trial judge, without inquiring into the content of the proposed opening, refused to permit defense counsel to open until after the Commonwealth had rested.  [601-604]

In a case in which a defendant convicted of possession of cocaine with intent to distribute was sentenced to ten years at the Massachusetts Correctional Institution in Concord, this court found no inconsistency between G. L. c. 94C, § 32A (*a*), providing for "imprisonment in the state prison for not less than one, not more than ten years," and G. L. c. 279, § 24, which states that a minimum sentence to State prison shall be for two and one-half years.  [604-606]

INDICTMENT found and returned in the Superior Court Department on April 8, 1981.

The case was tried before *James P. Donohue,* J.

*Richard Zorza* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

KASS, J.  We hold that under Mass.R.Crim.P. 24(a)(1), 378 Mass. 895 (1979),[1] the choice whether to open after the Commonwealth's opening statement or after the Commonwealth has rested belongs to the defendant alone (assuming

---

[1] Rule 24(a)(1) provides:  "*Order of Presentation.*  The Commonwealth shall present its opening statement first.  The defendant may present an opening statement of his defense after the opening statement of the Commonwealth or after the close of the Commonwealth's evidence.  The defendant shall present his closing argument first."

he has established, under principles reviewed below, the right to make an opening) and that it is error to restrict the timing of the defendant's opening statement until after the prosecution has presented its evidence.

The defendant, Robert Dupree, was convicted of possession with intent to distribute cocaine.[2] Two officers at trial testified that they had witnessed the defendant exchange drugs for currency in front of a Roxbury bar; the defendant and his girlfriend, who accompanied him the evening of the arrest, testified that no such transaction took place. Dupree did not contest that 2.8 grams of cocaine were seized from his jacket pocket; rather he argued that this small quantity of drugs and the paraphernalia removed during a subsequent search of his apartment (a kitchen strainer, spoons, some tin foil, and a glassine bag) were equally consistent with personal use of the drug.

At trial the assistant district attorney made a brief opening statement introducing himself and outlining the evidence he expected to present. The judge then dismissed the jury for morning recess and informed them that the Commonwealth would present its case upon their return. Defense counsel immediately stated his intention to make an opening at that time. Without inquiring into the content of the proposed opening, the trial judge stated he would not permit the defendant to open until after the Commonwealth had rested.[3]

---

[2] General Laws c. 94C, § 32A(*a*), inserted by St. 1980, c. 436, § 4, provided: "Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section thirty-one shall be punished by imprisonment in the state prison for not less than one, not more than ten years, or by a fine of not less than $1,000 and not more than $10,000, or both."

Cocaine is defined in G. L. c. 94C, § 31, to be a Class B controlled substance.

[3] The judge: "Well, no, I don't — once the Commonwealth rests, you'll be able to make whatever opening you want." Later the judge reiterated: "And as I indicated to you, my — for the procedures that I follow, at the conclusion of the Commonwealth's case, you certainly may make an opening, but at this particular time, no, I do not — I follow the rules of procedure, and I think it's discretionary with me and I do not allow that."

Nothing in Mass.R.Crim.P. 24(a)(1) grants the judge this discretion. In fact, language designed so to do, included in an earlier version of the rule,[4] was specifically deleted in that version of the rule finally promulgated by the Supreme Judicial Court. We presume that such a revision was made deliberately and with the intention of effectuating some change in the proposed rule. See *Rein* v. *Marshfield, ante* 519, 522 (1983).

The function of a defendant's opening statement is to inform the court and jury what he expects to prove. *United States* v. *Freeman,* 514 F.2d 1184, 1192 (10th Cir. 1975). We have held that the defendant's right to elect when to make his opening is subject to the limitations of self-restraint imposed by S.J.C. Rule 3:08, DF 12, as appearing in 382 Mass. 807 (1981). *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 615-616 (1981). Thus, where the opening would present "no more than [the defendant's] hope to puncture the Commonwealth's case somehow through cross-examination," the right to open may properly be denied. *Commonwealth* v. *Medeiros,* 15 Mass. App. Ct. 913 (1983). Here, however, the defendant not only was reasonably certain of the facts he would elicit on cross-examination,[5] see *United States* v. *Hershenow,* 680 F.2d 847, 858 (1st Cir. 1982), but he planned to, and did, present direct evidence on his behalf. In these circumstances there is no question but that the defendant was entitled to make an opening statement before the Commonwealth presented its evidence.

---

[4] In Massachusetts Proposed Rules of Criminal Procedure for District and Superior Courts (1976), rule 24(a)(1) provided: "ORDER OF PRESENTATION. The Commonwealth shall present its opening statement first. The defendant may, *in the discretion of the court,* present an opening statement of his defense after the opening statement of the Commonwealth or after the close of the Commonwealth's evidence" (emphasis added).

[5] This case had previously resulted in a mistrial. During this first trial, the Commonwealth had presented its entire case and been subject to cross-examination. Thus defense counsel could be reasonably certain of facts he would be able to adduce.

Whether to open at the beginning of the trial or after the Commonwealth had rested is a tactical decision resting with the defense attorney. As one commentator has noted:

> "[T]he jury is apt to attach undue weight to the prosecutor's opening statement which is left uncontradicted until the close of the state's evidence. Since the jury is highly attentive and impressionable at the outset of the trial, it may be unfair to deny counsel the opportunity to present the other side of the case until the middle of the trial when the effect of an opening statement is likely to be abated."

Decof, Art of Advocacy, Opening Statements § 2.02, at 2-5 & 2-6 (1982). See also *United States* v. *Hershenow, supra* at 858; *State* v. *Olson,* 156 Mont. 339, 346 (1971).

On the other hand, "defense counsel may not know what evidence, if any, he will present until he has heard and evaluated the government's" case. *Hampton* v. *United States,* 269 A.2d 441, 443 (D.C. 1970). It may, therefore, be prudent to reserve opening until after the government has rested, but the freedom to make the choice, under our rule, is that of defense counsel alone. The trial judge, of course, retains the authority to monitor the statement to prevent its wafting into argument, *United States* v. *Hershenow,* 680 F.2d at 858, as part of the court's responsibility to insure a fair trial for all litigants. *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. at 615-616. The authority, discussed in *McJunkin* and *Medeiros,* to deny an opening upon determination that defense counsel has no evidence to present does not justify the action of the trial judge in this case. To deny the defendant the right to open at the commencement of the trial without inquiry into the context of the proposed statement was error. To attempt to evaluate the extent of the prejudice which ensued would be an exercise in speculation,[6] and, therefore, we reverse. See *Com-*

---

[6] For a view that first impressions made in the opening statements greatly influence jury decisions, see Morrill, Trial Diplomacy § 2.1 (2d ed. 1972).

*monwealth* v. *Johnson,* 365 Mass. 534, 547 (1974); *Commonwealth* v. *Tabor,* 376 Mass. 811, 819 (1978). Cf. *Commonwealth* v. *A Juvenile* (*No. 2*), 384 Mass. 390, 392-393 (1981); *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. at 616-617.[7]

There exists a rule of the Superior Court, rule 7 (1974), which appears to repose in the trial judge discretion as to the timing of an opening in a criminal case. It provides, in pertinent part, "The court in its discretion may permit, or in a civil action require, a defendant to make an opening statement of his defense before any evidence is introduced." This apparent conflict with Mass.R.Crim.P. 24(a)(1) is resolved by the last paragraph of S.J.C. Rule 1:01, as appearing in 382 Mass. 699 (1981), which provides that to the extent the Massachusetts Rules of Criminal Procedure conflict with the rules of a court, the rules of criminal procedure shall control.

Since it will arise on a new trial, we have considered the defendant's argument that G. L. c. 94C, § 32A(*a*), which defines the crime of which the defendant was convicted, contains a provision for punishment which is unconstitutionally vague. Unlike G. L. c. 94C, § 32(*a*) (as in effect prior to 1982), declared unconstitutional in *Commonwealth* v. *Gagnon,* 387 Mass. 567, 574 (1982), the statute applied to Dupree contains no internal inconsistencies. Notably, it does not contain a minimum period of incarceration inconsistent with a lesser penalty, as was the case with § 32(*a*), the provision considered in *Gagnon.* The question raised by this appeal is whether c. 94C, § 32A(*a*) (as in effect prior to 1982), can be construed consistently with G. L. c. 279, § 24,[8] a question left undecided by *Gagnon.* 387 Mass. at

---

[7] Given our disposition of this issue, we need not consider the defendant's argument that the sentencing process was infected with error.

[8] General Laws c. 279, § 24, provides: "If a convict is sentenced to the state prison, except for life or as an habitual criminal, the court shall not fix the term of imprisonment, but shall fix a maximum and a minimum term for which he may be imprisoned. The maximum term shall not be longer than the longest term fixed by law for the punishment of the crime of which he has been convicted, and the minimum term shall not be less than two and one half years."

573. We think that this case does not present a conflict with G. L. c. 279, § 24.

The crux of the defendant Dupree's argument is that the punishment provision in G. L. c. 94C, § 32A(*a*), viz., "imprisonment in the state prison for not less than one, not more than ten years, or by a fine of not less than $1,000" is inconsistent with G. L. c. 279, § 24, which prescribes that a minimum sentence to State prison shall be for two and one-half years.[9]  Only Massachusetts Correctional Institution, Walpole (M.C.I., Walpole), is a State prison. G. L. c. 125, § 1(*o*). Dupree was not, however, sentenced to State prison. He was sentenced to ten years at Massachusetts Correctional Institution, Concord (M.C.I., Concord), a sentence the judge had the power to impose under G. L. c. 279, § 31. See *Commonwealth* v. *Hayes*, 372 Mass. 505, 508-510 (1977); *Commonwealth* v. *Graham*, 388 Mass. 115, 123-125 (1983). In making the crime punishable by a sentence to State prison, the Legislature has placed offenders on notice that transgression of the statute (i.e., G. L. c. 94C, § 32A[*a*]) is a felony. G. L. c. 274, § 1. The reference to State prison "may well indicate the Legislature's use of the statutory shorthand for a felony, rather than an intent to preclude a Concord sentence," *Commonwealth* v. *Hayes*, 372 Mass. at 511, quoted in *Commonwealth* v. *Graham*, 388 Mass. at 124. It did not compel a sentence to State prison.

We are at a loss to understand how a person such as Dupree (if again found guilty) may claim he has not had notice of the punishment alternatives. He knows that: the

---

[9] General Laws c. 94C, § 32A(*a*), was amended by St. 1982, c. 650, § 7, to eliminate this problem and now reads: "Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section thirty-one shall be punished by imprisonment in the state prison for not more than ten years, or in a jail or house of correction for not more than two and one-half years, or by a fine of not less than one thousand nor more than ten thousand dollars, or both such fine and imprisonment."

crime is a felony; the period of incarceration may be from one to ten years; incarceration may be in M.C.I., Walpole, but, by reason of G. L. c. 279, § 31, it may be at a correctional institution other than Walpole, e.g., at Concord; or there may be a fine and no incarceration at all. There is, upon analysis of this case, no conflict between G. L. c. 94C, § 32A(*a*), and G. L. c. 279, § 24. It is not incumbent upon us to conjure up unlikely abstract inconsistencies, such as might occur were a judge to attempt, in the face of G. L. c. 279, § 24, to sentence a person convicted under G. L. c. 94C, § 32A(*a*), to less than two and a half years at M.C.I., Walpole. That is, perhaps, one reason why the court in *Commonwealth* v. *Marrone,* 387 Mass. 702, 705-706 (1982), said G. L. c. 94C, § 32A(*a*), was consistent with G. L. c. 279, § 24. We are to indulge every rational presumption in favor of a statute's validity. *Commonwealth* v. *Gagnon,* 387 Mass. at 569. As there is no need, on the facts before us, to find the punishment provisions of § 32A(*a*) void for vagueness, we do not do so.

*Judgment reversed.*

*Verdict set aside.*