**STATE**

v.

**Jorge DePINA et al.**

**No. 2000–461–C.A.**

Supreme Court of Rhode Island.

Dec. 4, 2002.

Lauren Sandler Zurier, Providence, for Plaintiff.

Lauren E. Jones, David A. Cooper, John A. MacFadyen, III, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The defendants, Jorge DePina (DePina), Joao Monteiro (Monteiro), and Gildo Teixeira (Teixeira),[1] have appealed the entry of judgments of conviction of first-degree murder and conspiracy to commit first-degree murder. They have raised several claims of error, including the trial justice's cross-examination rulings at the suppression hearing and at trial, defects in the jury instructions, and the denial of their motions to sever and for a new trial. We briefly summarize the facts and the procedural history of the case before addressing these issues.[2] We conclude by denying

---

1. The record contains various spellings of defendants' names. In this opinion, we adopt the spelling used by defendants in their appellate briefs, except for quotes from the transcript, when we adopt the spelling used therein.

2. Because the original Superior Court case files were lost, we have relied on reconstructed files on appeal.

and dismissing the appeals of DePina and Monteiro, and affirming their judgments of murder and conspiracy; with respect to Teixeira, we affirm the judgment of conspiracy and vacate the judgment of conviction of murder. The Court is evenly divided on whether the state can retry Teixeira on the vicarious liability for murder count.

### Facts and Procedural History

In the early morning hours of December 28, 1997, Joao Resendes (Resendes) was stabbed during a fight outside a Providence club, referred to in the record as Club International or International Club, and died shortly thereafter at a hospital. In April 1998, the defendants were indicted on murder and conspiracy to murder charges, in violation of G.L.1956 §§ 11–1–6 and 11–23–1.

The evidence at trial consisted primarily of eyewitness testimony provided by Elma Braz (Braz), Nilton Pires (Pires), and Gelci Reverdes (Reverdes), who described the events they observed while an estimated 100 patrons left the club at its 2 a.m. closing time. The three witnesses testified that they had seen the fight in which Resendes was killed, and they described each defendant's participation in the encounter.

The key issues at trial were the reliability and accuracy of these eyewitness accounts and their in-court and out-of-court identifications, concerning which DePina and Monteiro filed pretrial motions to suppress. The trial justice denied the motions, finding that the witnesses' identifications of defendants were within constitutional limits. The defendants argued that the trial justice erred when he limited the scope of their cross-examinations on police procedures that might have influenced witnesses' responses and on the accuracy of the identifications in light of the context of the events.

DePina and Monteiro also filed pretrial motions to sever their trial from Teixeira's, citing potentially antagonistic defenses. Monteiro withdrew his motion, but DePina maintained his. The trial justice denied the motion, and the three defendants were tried jointly.

At the close of the state's presentation, all defendants filed motions for judgments of acquittal on both counts. The trial justice denied the motions of Monteiro and DePina, but granted Teixeira's motion with respect to the murder count, finding that the state had presented no evidence that Teixeira had aided or abetted the murder. The trial justice, however, said to counsel at sidebar that he would allow the jury to consider Teixeira's culpability for murder as a coconspirator on a vicarious liability theory. At the close of the trial, all defendants filed motions for new trials. The trial justice denied the motions and imposed on each defendant the mandatory life sentence on the first-degree murder count. Teixeira received a five-year concurrent term on the conspiracy count, on which count DePina and Monteiro received a ten-year concurrent term. Additional facts will be presented in discussing defendants' claims of reversible error on appeal.

### Opening Statements

DePina, Monteiro and Teixeira argued that the trial justice committed reversible error by barring them from commenting in their respective opening statements on evidence that they expected to elicit from the state's witnesses on cross-examination.[3] We disagree.

---

**3.** For example, DePina's and Monteiro's appellate brief listed admissions that they expected to solicit from the state's witnesses on cross-examination, based on the witnesses' testimony at the suppression hearing. Their compilation of gaps in the witnesses' knowledge included: Braz's negative answers to defense's questions "Did you see anybody stab

■ Rule 26.2 of the Superior Court Rules of Criminal Procedure permits a defendant to make an opening statement prior to the introduction of evidence by the state or just before presenting his or her case. This Court has thus far narrowly applied this rule, holding that "[t]he proper function of an opening statement is to apprise the jury with reasonable succinctness what the issues are in the case that is about to be heard and what evidence the prosecution and the defense expect to produce at trial in support of their respective positions." *State v. Byrnes*, 433 A.2d 658, 664 (R.I.1981). In *Byrnes*, we affirmed a trial justice's denial of the defendant's request to make an opening statement, asking the jury to consider, among other things, aspects of the witnesses' testimony that would be developed on cross-examination. *Id.; see also State v. Bleau*, 649 A.2d 215, 217 (R.I.1994) (affirming the trial justice's limiting defense counsel's opening statement to what would be presented in the defense case in chief).

In *State v. Turner*, 746 A.2d 700, 704 (R.I.2000) (per curiam), we affirmed this precedent, but commented on the qualitative difference between a case in which the defense counsel refused to specify the evidence he would elicit on cross-examination and a case in which a defendant could specify both the information he would elicit on cross-examination and the evidence he would present. *Turner* then cited two Massachusetts cases which suggested that defendants should be permitted to include in their opening statements evidence they reasonably expected to elicit on cross-examination. *Id.* (citing *Commonwealth v. Dupree*, 16 Mass.App.Ct. 600, 453 N.E.2d 1071, 1073–74 (1983); *Commonwealth v.*

*Medeiros*, 15 Mass.App.Ct. 913, 443 N.E.2d 900, 901 (1983)). In their appeal, defendants have asked this Court to apply this dicta from *Turner* to hold that the trial justice erred in limiting their opening arguments. We decline to do so.

■ Opening statements do not afford defendants either an opportunity for argument or an opportunity to impeach the state's witnesses. Rather, opening statements are limited to discussing evidence that counsel hopes to introduce through witnesses. Such evidence may include affirmative evidence that the defendant reasonably expects to solicit on cross-examination of a witness, provided that counsel brings that evidence to the trial court's attention. *Turner*, 746 A.2d at 704 (holding that the trial justice's refusal to permit the defendant to make an opening statement was not error when the "defendant neither stated definitively that he would be presenting evidence, nor did he specify the information that he hoped to elicit on cross-examination"). The requirement that the evidence be affirmative evidence bars the introduction of impeaching admissions that defendant expects to elicit on cross-examination. Consequently, it is incumbent upon a trial justice to exercise discretion in determining whether evidence indicating that a witness lacks knowledge is an impeaching admission or, instead, represents affirmative evidence suitable for inclusion in an opening statement.

■ The fact that witnesses were unable to give responsive answers to counsels' questions did not constitute such affirmative evidence. Rather, their responses were admissions of unobserved

---

him when he was leaning on his back on the car?", and "And as a matter of fact, Mr. DePena, sitting here at the end, you never saw him over there [near the car where the encounter occurred], did you?"; "Did you

hear Mr. Teixeira—that's my client—say anything?"; and Pires' positive answer to defense's question: "And your testimony is that you never saw my client, Mr. DePena, with a knife; is that correct?"

details that defendants did, in fact, elicit on cross-examination during the suppression hearing. Consequently, the trial justice did not abuse his discretion by limiting defendants' opening statements.

## Scope of Cross-examination

DePina and Monteiro alleged that the trial justice's restrictions on their cross-examinations at the suppression hearing and at trial resulted in reversible error. We disagree.

DePina and Monteiro have argued that the trial justice's rulings at the suppression hearing precluded them from "eliciting pivotal testimony on the suggestibility and reliability concerns [regarding eyewitness identifications]." They contended that without this testimony, the trial justice could not have made an "omniscient suppression decision" on their motion to suppress the witnesses' identifications. They further argued that the identifications were not reliable, and that the trial justice's rulings prevented them from probing the unreliability of the identifications.

■ Despite these allegations, defendants have not challenged the admission of the witness identifications on appeal. Objections to eyewitness identification may be challenged before trial in one of two ways: first, by evidence pursuant to Rule 602 of the Rhode Island Rules of Evidence that the witness is not competent to testify, *State v. Spratt,* 742 A.2d 1194, 1199–1200 (R.I.1999); and, second, on due process grounds. *See State v. Andrade,* 657 A.2d 538, 541 (R.I.1995) (holding that the latter inquiry requires this Court on review to "determine whether the totality of the circumstances discloses procedures that were 'so unnecessarily suggestive and conducive to irreparable mistaken identification that it constituted a denial of due process of law' ").

■ On appeal, defendants have specifically disclaimed both of these approaches to challenging the identifications of eyewitnesses. They argued, rather, that the trial justice's rulings prevented them from conducting an "appropriate identification-suppression inquest." This Court, however, does not review objections to a trial justice's rulings on cross-examination to determine whether the inquest was appropriate. We review such claims of erroneous rulings for an abuse of discretion, and we shall overturn a trial justice's rulings only when such abuse constitutes prejudicial error. *State v. Roderigues,* 656 A.2d 192, 194 (R.I.1995).

■ Contrary to defendants' claim that there was a prejudicial restriction on cross-examination, our review of the transcript reveals that defendants were given adequate opportunity to probe the witness identifications for suggestibility and that the trial justice did not abuse his discretion. The trial justice allowed extensive questioning into the circumstances of the police interviews of the witnesses and of the identification procedures. Moreover, we have inspected the police photo array and are satisfied that the identification procedures were not unduly suggestive. Therefore, the trial justice's rulings on the scope of defendants' cross-examinations at the suppression hearing did not result in reversible error.

■ DePina and Monteiro also have argued that the trial justice's limitation of their cross-examinations at trial infringed on their constitutional rights to confront witnesses, citing *State v. Ellwood,* 17 R.I. 763, 767, 24 A. 782, 783 (1892), as the seminal case for the proposition "that counsel must be provided '*considerable* latitude' in inspecting a witness's memory on cross." (Emphasis by defendants.) The Sixth Amendment to the United States

Constitution and the Declaration of Rights, article 1, section 10, of the Rhode Island Constitution guarantee to defendants the right to confront witnesses against them. This right includes the right "to cross-examine [their] accusers." *State v. Bustamante*, 756 A.2d 758, 765 (R.I.2000) (quoting *State v. Wiley*, 676 A.2d 321, 324 (R.I. 1996)). Although we have held that a defendant should be granted latitude to inquire into the bias, motive, or prejudice of a witness, *id.* at 765–66, this right is not unfettered. A given restriction may constitute harmless error, and the right to cross-examine a witness is not an absolute right to ask any question. *State v. Toole*, 640 A.2d 965, 977 (R.I.1994). Questions that are irrelevant or offer no probative value exceed the limits of allowable cross-examination, and the trial judge may impose reasonable limitations on the scope of cross-examination on a particular issue. *Turner*, 746 A.2d at 703; *State v. Bettencourt*, 723 A.2d 1101, 1109–10 (R.I.1999).

▮ Having carefully reviewed the record, it is our opinion that the trial justice did not abuse his discretion in limiting the defendants' cross-examinations of witnesses at trial. Contrary to defendants' claims, the sufficiency of their cross-examinations is evidenced by the fact that they were able to solicit from the witnesses numerous admissions of their uncertainty about several details of the fight. For example, defendants cross-examined Braz extensively on her location relative to Resendes during the fight, whether she could remember what clothing defendants were wearing, the amount of lighting, and even the victim's position against a nearby vehicle during the fight. Therefore, we hold that the trial justice did not unduly restrict the scope of cross-examination at trial.

## Motions to Pass and Sever

DePina and Monteiro also claimed that the trial justice's refusal to sever their cases from Teixeira's produced a two-fold error. First, the trial justice's denial of their motions forced them to defend against allegations by the state and by their codefendant. Second, the erroneous denial of their motions to sever constituted grounds for a new trial. Again, we disagree.

▮ A defendant is not entitled to severance as a matter of right; severance is an issue directed to the sound discretion of the trial justice. *State v. Gibbons*, 418 A.2d 830, 834–35 (R.I.1980). We reverse a trial justice's denial of a motion to sever only when a defendant shows that he has in fact suffered prejudice sufficiently substantial to impinge upon his right to a fair trial. *Id.* at 835. Here, DePina and Monteiro have argued that a statement made by Teixeira's counsel during closing argument constituted the requisite level of prejudice and thus deprived them of their right to a fair trial. Specifically, they alleged that Teixeira's counsel improperly implicated codefendants by speculating:

> "If this did happen, * * * and this stabbing did take place, without her [Reverdes] having been able to hear what he [Teixeira] said, * * * isn't it as reasonable to assume that he could have been saying, 'Stop, stop'?"

This Court has held that such comments neither represent antagonistic defenses, nor do they warrant reversal of the denial of the motion to sever. *Gibbons*, 418 A.2d at 835. Although DePina and Monteiro contended that this statement planted the "seeds of prejudice [that] would soon blossom into guilty verdicts," we have held that a contention that a defendant would have a better chance of acquittal if tried separately is insufficient grounds to reverse the denial of a motion to sever. *Bustamante*, 756 A.2d at 767. Further, we have held that immediate, cautionary

instructions can cure adverse comments. *State v. Oliveira*, 774 A.2d 893, 912 (R.I. 2001). In this case, after the defense objected to the prosecutor's comment, the trial justice gave a cautionary instruction, directing the jury to disregard comments of counsel that were unsupported by evidence. He then reiterated this cautionary instruction in his jury instructions. Having reviewed the record in its entirety, we are satisfied that DePina and Monteiro were not prejudiced by Teixeira's defense.

The defendants next argued that this erroneous denial of their motion to sever established grounds for a new trial, and thus that the trial justice improperly denied their motion for a new trial. In light of our holding that the trial justice properly denied their motion to sever, we conclude that this secondary claim of error is unsupportable. Moreover, defendants in essence premised their motion for a new trial on an alleged error of law at trial, namely, the denial of a motion to sever. Rule 33 of the Superior Court Rules of Criminal Procedure clearly prohibited such an argument:[4] "The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice, except that a new trial may not be granted for error of law occurring at the trial." We conclude, therefore, that the trial justice properly denied defendants' motion to sever and for a new trial on this ground.

■ The defendants also argued that the trial justice's denial of their motion to pass was reversible error because of the antagonistic closing argument of Teixeira.[5]

The denial of a motion to pass a case and declare a mistrial lies within the discretion of the trial justice and will be disturbed only if it is clearly wrong or if the trial justice has abused his or her discretion. *State v. Campbell*, 691 A.2d 564, 569 (R.I. 1997); *State v. Figueroa*, 673 A.2d 1084, 1091 (R.I.1996) (The trial justice "possesses 'a front-row seat' at the trial and can best determine the effect of the improvident remarks upon the jury.") (quoting *State v. Tempest*, 651 A.2d 1198, 1207 (R.I. 1995)).

■ In this case, the trial justice examined the testimony of the witnesses and concluded that Teixeira's closing statement neither mischaracterized the evidence nor drew unfair inferences. At sidebar, the trial justice reiterated that the jury had been instructed before the beginning of the trial—and would be again instructed—that closing arguments did not constitute evidence. In our opinion, the trial justice's denial was not clearly wrong, and defendants' motion to pass was properly denied.

### Jury Instructions

At trial, DePina and Monteiro objected to the trial justice's refusal to instruct the jury on the lesser-included offense of manslaughter, a denial, they asserted, that constituted reversible error. Our careful review of the record does not support this claim.

■ A trial justice must include instructions on lesser-included offenses "if such an instruction is warranted by the

---

4. The revised version of Rule 33 of the Superior Court Rules of Criminal Procedure has eliminated the prohibition on granting motions for new trials for errors of law occurring at trial. However, this revised version became effective on July 1, 2002, and was not made retroactive or applicable to pending cases.

5. DePina and Monteiro have framed this issue as the denial of their "motion to pass," whereas the state has characterized it as a "motion for a mistrial." We have adopted the defendants' designation.

evidence." *State v. Figueras,* 644 A.2d 291, 294 (R.I.1994). This Court applies the *Blockburger* test to determine whether an offense is a lesser-included, or a separate offense. *See, e.g., State v. Grabowski,* 644 A.2d 1282, 1286 (R.I.1994) (holding that, under *Blockburger,* second-degree murder is a lesser-included offense of first-degree murder) (citing *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)). Under this analysis, manslaughter is a lesser included and not a separate offense of murder because it "does not require proof of a fact that [first-degree murder] does not." *Id.*

■ Murder is defined as "the unlawful killing of a human being with malice aforethought. * * * Every murder perpetrated by * * * willful, deliberate, malicious, and premeditated killing, * * * is murder in the first degree. * * * Any other murder is murder in the second degree." G.L.1956 § 11–23–1. Manslaughter is distinguished from first-degree murder because the elements of manslaughter exclude malice aforethought. *See State v. Hockenhull,* 525 A.2d 926, 929 (R.I.1987) (defining voluntary manslaughter as "the product of a deliberate act that does not include the element of malice aforethought by reason of one or more mitigating factors" and defining involuntary manslaughter as "an unintentional homicide without malice aforethought, committed either in performance of an unlawful act not amounting to a felony or in the performance of a lawful act with criminal negligence"). As such, first-degree murder requires proof of a fact that manslaughter does not require, specifically, malice aforethought. But, manslaughter does not require proof of a fact that first-degree murder does not require. Therefore, manslaughter is a lesser-included offense of first-degree murder.

■ Although defendants did not specify whether they sought a voluntary or involuntary manslaughter charge, we will address the appropriateness of each. Contrary to defendants' assertion that a manslaughter instruction is warranted whenever the facts indicate any putative amount of lesser-included conduct, this Court has held that "[a]n instruction on the lesser charge is necessary only if an actual and adequate dispute exists about the element between the greater and the lesser charges." *Figueras,* 644 A.2d at 294. Thus, to warrant a voluntary manslaughter charge, the evidence must show an actual and adequate dispute about the presence of a "mitigating factor[]" that would negate the malice element of first-degree murder. *Hockenhull,* 525 A.2d at 929. We reject defendants' claim that the "nightmarish spectacle" of "like-minded rabble * * * pummeling one another" outside the club and the bruises on the victim's knuckles satisfies this standard. Simply put, this evidence did little to establish that defendants might have acted in the heat of passion, for there was no nexus between the alleged victim's acts of self-defense and defendants' actions. In addition, defendants presented no evidence of any other recognized mitigating factor. *Id.* at 929–30 (listing mitigating factors); *see also State v. Johnson,* 667 A.2d 523, 529 (R.I. 1995) (affirming the trial justice's refusal to instruct on manslaughter because "insufficient evidence was presented even to suggest or raise the issue that defendant was intoxicated to such a degree as to negate the specific intent required for murder"). In sum, the complete absence of evidence creating an actual and adequate dispute over whether defendants lacked malice affirms that a voluntary manslaughter charge was not warranted.

■ The defendants similarly offered no evidence that an involuntary man-

slaughter charge was warranted. Their defense at trial was that the witnesses had misidentified them as the assailants. This defense cannot be reconciled with involuntary manslaughter, given that implicit in the definition of involuntary manslaughter is the admission of the commission of an offense. *See Hockenhull*, 525 A.2d at 929 (defining involuntary manslaughter as "an unintentional homicide * * * committed * * * in performance of an unlawful act"). Thus, although manslaughter is a lesser-included offense of murder, we conclude that the trial justice did not err in omitting a manslaughter instruction, given the absence of evidence to warrant such a charge.

## DePina and Monteiro's Motions for a New Trial

In deciding a motion for a new trial, the trial justice "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence. * * * If, after an independent review of the evidence, the trial justice reaches the same conclusion as the jury, his or her task is complete and the verdict should be affirmed." *State v. Bleau*, 668 A.2d 642, 646 (R.I.1995) (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)); *see also State v. Snow*, 670 A.2d 239, 243 (R.I.1996) (describing the trial justice's requisite inquiry: "First, the trial justice must consider the evidence in light of the charge to the jury; second, the trial justice must determine his or her own opinion of the evidence; third, the trial justice must determine whether he or she would have reached a different result from that of the jury"). This Court accords great weight to the decision of the trial justice if the trial justice complies with this procedure and articulates an adequate rationale for denying a motion for a new trial. *Id.* at 244. We reverse the ruling only if we determine that the trial justice "overlooked or misconceived material evidence or was otherwise clearly wrong." *State v. Scurry*, 636 A.2d 719, 725 (R.I. 1994).

DePina and Monteiro argued that the unexpected, antagonistic defense presented by Teixeira at trial, as well as the trial justice's refusal to sever their trial from Teixeira's trial, constituted grounds for a new trial. They pointed to Teixeira's counsel's speculation at closing argument that Teixeira may have been telling his codefendants to "Stop! Stop!" In addition, they argued that the trial justice neglected to conduct the requisite three-pronged analysis of the evidence. We reject this argument. DePina and Monteiro have misconstrued *Banach's* directive that the trial justice "choose which conflicting testimony and evidence to accept and which to reject" as imposing a requirement that the trial justice articulate explicitly his acceptance and rejection of each witness's testimony. *Banach*, 648 A.2d at 1367. Rather, *Banach* held that "the trial justice need not refer to all the evidence supporting the decision but need only cite evidence sufficient to allow this Court to discern whether the justice has applied the appropriate standards." *Id.*

Here, the trial justice conducted the requisite inquiry and adequately articulated the grounds for his denial of DePina and Monteiro's motions. The trial justice reviewed the testimony of each of the state's key witnesses and assessed their credibility. After examining the evidence against DePina and Monteiro, the trial justice concluded that "[the court] cannot conclude that acting as the 13th juror, that it would have reached a result that would have been any different than the result that was reached by the jurors." Although the trial justice did not extensively review the evi-

dence, his analysis satisfied the requirements.

### Issues Specific to Teixeira on Appeal

#### 1. Conspiracy Conviction

The trial justice's only consideration of Teixeira's new-trial motion was the statement, "I neglected to indicate that Ms. Reverdes indicated that she saw Mr. Teixeira and also place[d] words into Mr. Teixeira's mouth." This single sentence was clearly insufficient to fulfill the requirements outlined in *Snow, see ante.*

With respect to Teixeira's conspiracy conviction, we exercise our jurisdiction to examine *de novo* whether the evidence supports the jury's verdict. *State v. Card,* 105 R.I. 753, 757–58, 255 A.2d 727, 730 (1969). In so doing, we review the trial evidence independently, but may accept the trial justice's determination of credibility as conclusive. *State v. Vorgvongsa,* 670 A.2d 1250, 1253 (R.I. 1996).

A conspiracy conviction requires proof beyond a reasonable doubt that two or more persons combined to commit an unlawful act or to perform a lawful act for an unlawful purpose. *State v. Mastracchio,* 612 A.2d 698, 706 (R.I. 1992). The agreement entered into need not be explicit but can be inferred from the conduct, circumstances, and action of the parties. *Id.; see also Bustamante,* 756 A.2d at 766–67. Additionally, a conspiracy may be entered into contemporaneously with the performance of the unlawful act. *Id.*

After considering the totality of the evidence presented at trial, it is our conclusion that the evidence was sufficient to support the jury's finding of a conspiracy in which Teixeira participated. Braz testified that upon leaving the club at 2 a.m., she observed Resendes running across Westminster Street while being pursued by six or seven men, who then proceeded to beat him. She identified Teixeira as one of the men who "just punched [at Resendes]. I don't even know if he hit him or not, but he did strike a punch[.]" Reverdes also placed Teixeira at the altercation, testified that she saw defendants talking to each other, testified that she heard Teixeira say, "Let's jet," and saw him leave with DePina and Monteiro. Witness Anthony Carvalho corroborated the Reverdes account, testifying that Teixeira left in the same vehicle as DePina and Monteiro. A police report, confirming Carvalho's account, listed Teixeira as one of the occupants, along with DePina and Monteiro, in the Honda that an officer had stopped. Based on the totality of this evidence, we conclude that sufficient evidence existed for the jury to find beyond a reasonable doubt that Teixeira conspired to commit an unlawful act, namely, the assault on Resendes.

#### 2. Vicarious Liability for Murder Conviction

At the close of the state's evidence, the trial justice granted Teixeira's motion for a judgment of acquittal, pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure, on the first-degree murder count on an aiding and abetting theory, specifically stating:

> "The Court is required to consider the evidence to determine whether or not there is sufficient evidence to permit a finding beyond a reasonable doubt of the defendant's guilt. After a consideration of the evidence, the testimony, as well as the evidence, the Court is unable to agree that the State has met its burden with respect to the defendant Gildo Teixeira on the Count 1 [murder] of the indictment."

At sidebar, the prosecutor raised the issue of coconspirator liability, to which the trial justice responded:

"Certainly the crime of conspiracy is a separate, substantive offense from the committed offense. One can conspire with others to commit the offense and take no further act in furtherance of a conspiracy and be convicted.

"The evidence in order to sustain a verdict of guilty beyond a reasonable doubt as an aider and abettor, the evidence must be such that the person did something affirmatively more than by just being there. From the evidence, I am not satisfied that Mr. Texeira did anything before the stabbing other than perhaps agree with the other defendants to do something. I realize that's a fine hair that is being split, but it is, nevertheless, a hair on a bald head."

The prosecutor thereupon pointed out that if a defendant has not withdrawn from the conspiracy, he may be guilty of all acts committed by his coconspirators. The trial justice attempted to clarify his ruling and stated:

"And my ruling is that he cannot be held liable as an aider and abettor as much [as] he could be held liable as a conspirator if, in fact, the jury is satisfied that a conspiracy existed. And if he is found liable as a conspirator, his liability is the same as the actors."

" * * *

"*As to [the] aiding and abetting, I granted the motion* [for judgment of acquittal on the murder count]. I denied it with respect to the conspiracy.

" * * *

"As to Depena, as to Monteiro, all two counts, both counts [murder and conspiracy], are present. *As to Texeira, only Count 2* [conspiracy]." (Emphases added.)

Whereupon, the prosecutor again addressed the issue of coconspirator liability:

"If * * * there is any evidence to go to a jury that he is a member of a conspiracy to commit murder and then the murder is committed and there hasn't * * * been a finding that he has withdrawn from that conspiracy, than [*sic*] he is still responsible for that conspiracy; notwithstanding the fact that he may not have been aiding and abetting when it was committed, he was still part of that conspiracy if his co-conspirators executed that conspiracy."

After further comments by the prosecutor, the trial justice decided to postpone this discussion on the state's theory for Teixeira's murder charge. When the court revisited this issue on the following day in the jury's absence, defense counsel referred the trial justice to *State v. Iovino*, 554 A.2d 1037 (R.I.1987), for the proposition that there were no due process or double jeopardy impediments to the court's reversing its ruling. The trial justice then made the following ruling:

"The Court, having reconsidered its ruling on the motion for judgment of acquittal with respect to Mr. Texeira as to Count 1, will reverse itself. *The jury will be permitted to determine whether or not the evidence is sufficient to prove that Mr. Texeira conspired with others in the murder of Mr. Resendes.*" (Emphasis added.)

Defense counsel neither objected at trial to the trial justice's reversal of his ruling, nor raised the issue of double jeopardy on appeal. Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure requires that the "defense of double jeopardy * * * be raised only by motion before trial. * * * Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court

for cause shown may grant relief from the waiver." The clerk entered the reversal reinstating the charge in the Criminal Case Action Report, having entered a judgment of acquittal on the previous day.

The trial justice, however, never instructed the jury on vicarious liability in the context of a conspiracy, and he never told the jury that in order to find Teixeira guilty of murder, it must determine beyond a reasonable doubt that the murder was committed in the course of and in furtherance of the unlawful agreement. *State v. Barton*, 424 A.2d 1033, 1035–36 (R.I.1981) (establishing elements of vicarious liability). The trial justice simply instructed the jury that the aiding and abetting murder instruction did not apply to Teixeira, stating, "Ladies and gentlemen, in instructing you on the theory of criminal responsibility under the so-called aiding and abetting theory, I have instructed you as a matter of law; and you, therefore, must accept this, that those instructions did not apply to Mr. Teixeira." Moreover, at a sidebar conference, after he was reminded by the prosecutor that he failed to instruct on the vicarious liability for murder charge, the trial justice responded to counsel:

> "As to aiding and abetting, I did specifically instruct them as to conspiracy because, as we know, *I did grant a judgment of acquittal as to Teixeira*, and I will instruct the jurors that the instruction of aiding and abetting would only apply or does not apply to Mr. Teixeira. So, I am going to decline your request to go back over this." (Emphasis added.)

During its deliberations, the jury requested a clarification of the instruction with respect to Teixeira, and the trial justice responded, "You've asked for clarification with respect to Mr. Teixeira. The Court has instructed you that as a matter of law, you may not consider whether Mr.

Texeira aided and abetted anyone in the commission of the crimes for which he has been charged."

Indisputable evidence that the jury did not consider the murder charge against Teixeira is apparent from the jury verdict form, which did not include a count of murder against Teixeira. Only the following questions on the jury verdict form referred to Teixeira:

> "**QUESTION 4:** First Degree Murder—Has the State proved that Gildo Texeira conspired with Jorge DePena to commit Murder in the First Degree? * * *

> "**QUESTION 9:** Conspiracy to Commit Second Degree Murder—Has the State proved that Gildo Texeira conspired with Jorge DePena to commit Murder in [the] Second Degree?"

When reading the verdict in open court, the clerk stated:

> "THE CLERK: Question 4: First-degree murder. Has the State proved that Gildo Texeira conspired with George DePena to commit murder in the first degree?

> "MR. FOREPERSON: Yes. * * *

> [The clerk then finished reading the jury's findings on the remaining questions.]

> "THE CLERK: Mr. Foreperson, hearken to your verdict as recorded by the court * * * [a]s to defendant Texeira to Count 1, murder in the first degree, jury finds the defendant guilty. As to Count 2, conspiracy to murder in the first degree, the jury finds the defendant guilty. * * * Mr. Foreperson, is this your true verdict?

> "MR. FOREPERSON: Yes."

Teixeira's counsel did not object.

On appeal, Teixeira has raised three claims of error with respect to jury instructions: (1) the jury instructions wrong-

fully omitted instructions on the elements of vicarious liability for murder; (2) the jury instructions wrongfully omitted instructions on assault; and (3) the cumulative effect of these errors yielded an unconstitutional conviction.

■ We agree that no instructions on the vicarious liability for murder charge were presented to the jury and that the verdict form omitted the murder count against Teixeira for the jury's consideration. We further agree that because the trial justice failed to instruct the jury on the vicarious liability for murder count, he could not undertake the required new-trial motion review of "the evidence in light of the charge to the jury." *Snow*, 670 A.2d at 243. We are evenly divided, however, on whether the murder charge was properly reinstated by the trial justice. Two justices are of the opinion that the murder charge was properly reinstated, but because of the instructional errors and the failure of the jury to return a verdict on this count, the conviction should be vacated and the case remanded for a new trial on this charge. Two justices are of the opinion that the charge was not properly reinstated, the jury did not return a verdict on this count, the judgment of acquittal on aiding and abetting of murder was a final adjudication on the murder charge and, therefore, Teixeira's conviction on the murder charge should be vacated, without remanding this case to the Superior Court for a new trial on this charge.

### Conclusion

In summary, we deny and dismiss DePina and Monteiro's appeals and affirm the judgments of murder and conspiracy.

We affirm Teixeira's judgment of conviction on the conspiracy count, but we sustain his appeal and vacate his conviction for murder. The Court is evenly divided, however, on whether the state can retry

Teixeira on the vicarious liability for murder count. The case may be returned to the Superior Court.