**Supreme Court**

No. 2011-259-Appeal.
(PM 03-3727)

Jorge M. DePina           :

v.           :

State of Rhode Island.           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jorge M. DePina          :

v.                       :

State of Rhode Island.   :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on October 22, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The applicant in this case, Jorge M. DePina[1] (applicant or DePina), filed a subpoena duces tecum in connection with his application for postconviction relief, seeking discovery of the mental health records of Gelci Reverdes (appellant or Reverdes), who testified as an eyewitness in the applicant's 1998 murder trial.  Reverdes is before the Court on appeal from a Superior Court order denying her motion to quash the subpoena.  After hearing the arguments of counsel and carefully examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal may be decided at this time.  For the reasons discussed below, we vacate the order and remand the case to the Superior Court with directions to make findings consistent with this opinion.

---

[1] Although applicant's last name is spelled different ways throughout the record, for the sake of consistency this Court adopts the spelling used in State v. DePina, 810 A.2d 768 (R.I. 2002).

**Facts and Travel**

The underlying facts leading up to DePina's application for postconviction relief were discussed in great detail in State v. DePina, 810 A.2d 768, 772-73 (R.I. 2002), in which this Court affirmed applicant's conviction on counts of first-degree murder and conspiracy to commit first-degree murder. The applicant was initially convicted after a jury trial on these counts—in which he was tried jointly with two other defendants—stemming from a stabbing outside a Providence nightclub in the early morning hours of December 28, 1997, that left one man dead. Id. at 773. At trial, Reverdes was one of the eyewitnesses who described the events leading up to the stabbing as 100 patrons left the club and a fight broke out. Id. Although applicant filed a pretrial motion to suppress Reverdes' eyewitness identification, the trial justice denied the motion, finding the identification within constitutional limits. Id.

After DePina's appeal was denied by this Court, applicant filed a pro se application for postconviction relief on July 14, 2003, based on a claim of ineffective assistance of counsel. He filed a second pro se application on January 14, 2010, which expanded the grounds upon which applicant sought postconviction relief, including whether the prosecution withheld information regarding an agreement by the state to prevent Reverdes' brother from being deported in exchange for her testimony in DePina's murder trial. On May 21, 2010, applicant—represented by new counsel—filed yet another amended application for postconviction relief, in which he included the claim about Reverdes and reiterated claims of evidence spoliation, jury obstruction, and ineffective assistance of trial counsel.[2] Contemporaneous with the filing of this amended application, applicant filed a motion to conduct discovery in connection with his application for

---

[2] In the May 21, 2010 motion to file an amended application for postconviction relief, applicant explains that, although he has been represented by both appointed and retained counsel in seeking postconviction relief, neither attorney assisted him in his pursuit, resulting in numerous applications.

postconviction relief.

On March 14, 2011, in a written filing, applicant advised the court that Reverdes had been deposed on March 2, 2011, and at that deposition, she was accompanied by a member of the state's Office of the Mental Health Advocate. At the deposition, Reverdes disclosed that she suffered from mental illness and memory problems, and had been prescribed several psychotropic medications. Reverdes also stated that she was unable to recall how long she had been on medication or had suffered from such ailments. Based on this information, applicant asserted that Reverdes may have been suffering from mental health or memory issues at the time she identified DePina as a perpetrator or when she testified at his murder trial. The applicant then indicated that he was preparing a motion and a subpoena to obtain all of Reverdes' medical, psychiatric, and psychological records in connection with his application for postconviction relief.

On May 9, 2011, applicant filed a motion[3] requesting the court's permission to issue a subpoena upon the Keeper of Records of Gateway Healthcare (Gateway) for all of Reverdes' psychological, psychiatric, medical, and counseling records. In response, Reverdes—represented by an attorney from the Office of the Mental Health Advocate—filed an objection to applicant's motion. At a hearing on the motion, the Superior Court justice—who also had presided over the murder trial—granted the motion. The applicant then served the subpoena for Reverdes' medical records upon Gateway.

Reverdes subsequently filed a motion to quash the subpoena, and a hearing on the motion was held on July 19, 2011; attorneys were present on behalf of DePina, Gateway, the state, and

---

[3] Although applicant filed the motion pursuant to Rule 17(c) of the Superior Court Rules of Criminal Procedure, the trial justice ruled that, because the postconviction relief action was a civil matter, the subpoena should issue pursuant to the Superior Court Rules of Civil Procedure.

Reverdes—again represented by a mental health advocate attorney. At that hearing, counsel for Gateway moved the court to order the records protected pursuant to the Rhode Island Confidentiality of Health Care Information Act,[4] a request that was denied by the trial justice. On behalf of Reverdes, counsel argued that DePina had failed to seek Reverdes' health care records before the 1998 trial, and that the issue of such records falling under the ambit of newly-discovered evidence should, therefore, be deemed to have been waived. The trial justice denied Reverdes' motion to quash the subpoena, but directed that the documents be produced for an in camera review by the trial justice in order to determine whether, before Reverdes testified about witnessing the homicide, she had been suffering any mental health issues "which may touch upon her ability to observe and to remember certain facts."

After the trial justice's in camera review of the records, a second hearing was held on July 29, 2011. The trial justice—citing Rule 26 of the Superior Court Rules of Civil Procedure—declared that he had reviewed the medical records produced—totaling over 700 pages—and extracted a small percentage of documents that he deemed appropriate for disclosure to applicant. The trial justice specified that, in turning over the documents, the court was not ruling that the information contained therein was relevant or admissible in any subsequent proceeding, but rather was being provided "so that [applicant] can have a full opportunity to proceed on any legal theory and factual theory that he may believe supports his application for postconviction relief."

After the ruling, counsel for Reverdes requested that the trial justice stay the decision and postpone distributing the selected documents pending an appeal to this Court, pursuant to G.L. 1956 § 5-37.3-4 of the Rhode Island Confidentiality of Health Care Information Act.

---

[4] The Rhode Island Confidentiality of Health Care Information Act is found in G.L. 1956 chapter 37.3 of title 5.

Counsel also argued that, because the records began in the year 2007, the records were not relevant to an incident that occurred in 1997. Rather, counsel claimed that the discovery request constituted a "fishing expedition," and that to order production of health care information compiled twelve years "after the testimony is embarrassing, oppressive and burdensome under Rule 45 [of the Superior Court Rules of Civil Procedure]."

The trial justice entered an order (order) denying Reverdes' motion to quash, but stayed its effect until August 12, 2011. Reverdes requested that this Court stay the disclosure of any medical records pending this appeal. This Court granted the stay[5] and ordered the appeal expedited.

## Discussion

As an initial matter, we first address the nature of Reverdes' appeal to this Court. The order denying Reverdes' motion to quash is interlocutory—a type of order that lacks finality and concerning which this Court has a long-standing practice to decline to address on appeal. See Dale v. Dale, 37 A.3d 124, 124 (R.I. 2012) (mem.) (indicating that "[i]nterlocutory orders are reviewable only by way of writ of certiorari"). Despite this general rule, however, a judicial doctrine has developed, first articulated in the case McAuslan v. McAuslan, 34 R.I. 462, 472, 83 A. 837, 841 (1912), whereby this Court "will review an order or decree which, although in a strict sense interlocutory, does possess such an element of finality that action is called for before the case is finally terminated in order to prevent clearly imminent and irreparable harm."[6] Town

---

[5] Notably, those aspects of DePina's application for postconviction relief not involved in this appeal were ordered to proceed in Superior Court.

[6] A second exception to the general rule concerning interlocutory orders also exists within G.L. 1956 § 9-24-7, entitled "Appeals from interlocutory orders and judgments," which states:

of Lincoln v. Cournoyer, 118 R.I. 644, 648-49, 375 A.2d 410, 412-13 (1977).

In this case, Reverdes argues that the denial of her motion to quash the subpoena seeking her medical records ends her stake in the litigation. She also argues that the consequences of the order are imminent and irreparable, because all other avenues of relief have been exhausted, and because once her medical records are released, the confidential nature of those documents will be irremediably breached. We agree.

The record is clear that the challenged order allows for the inspection of Reverdes' health care records, including psychological, psychiatric, and counseling records—information that enjoys limited statutory protection. Moreover, Reverdes—who is not a party to the underlying postconviction-relief action—has no standing to challenge the introduction of those records into evidence in that proceeding. Therefore, based on the record before us, we are satisfied that the order entered possesses the requisite element of finality and potential for irreparable harm to warrant our immediate review. See McAuslan, 34 R.I. at 472, 83 A. at 841. Having resolved this procedural issue, we now turn to the merits of Reverdes' appeal.

It is well settled that, although the underlying conviction from which collateral relief is sought is criminal in nature, postconviction-relief proceedings are civil actions. G.L. 1956 §§ 10-9.1-1; 10-9.1-7; Palmigiano v. Mullen, 119 R.I. 363, 374, 377 A.2d 242, 248 (1977). As a result, a litigant seeking discovery in this type of proceeding must do so in accordance with the Superior Court Rules of Civil Procedure. Sections 10-9.1-2; 10-9.1-7.

Rule 26(b)(1) of the Superior Court Rules of Civil Procedure provides that "[p]arties may

---

"Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered, by an interlocutory order or judgment, or a new trial is ordered or denied after a trial by jury, an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment, and the appeal shall take precedence in the [S]upreme [C]ourt."

obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." This Court previously has indicated that Rule 26—along with the remaining provisions of the Rules of Civil Procedure pertaining to discovery—should be construed liberally so as to promote broad disclosure among parties during the pretrial phase of litigation. Henderson v. Newport County Regional Young Men's Christian Association, 966 A.2d 1242, 1246 (R.I. 2009); Robert B. Kent et al., Rhode Island Civil and Appellate Procedure § 26:3 (West 2006). In fact, our case law is clear that "[t]he philosophy underlying modern discovery is that prior to trial, all data relevant to the pending controversy should be disclosed unless the data is privileged." Henderson, 966 A.2d at 1246 (quoting Cabral v. Arruda, 556 A.2d 47, 48 (R.I. 1989)).

Despite this general policy, however, the General Assembly has crafted a statutory exception to discovery efforts that are aimed at obtaining an individual's confidential health care information.[7] Under the Confidentiality of Health Care Information Act (act), set forth in chapter 37.3 of title 5, an individual who is not otherwise a party to the proceeding must be provided with notice of the issuance of a subpoena seeking his or her health care records, § 5-37.3-6.1(a)(1), and has standing to file a motion seeking to quash a subpoena for his or her confidential health care records. Section 5-37.3-6.1(b). The act further provides that "[t]he court shall grant [the] motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual." Section 5-37.3-6.1(d). Pursuant to § 5-37.3-6.1(e), the court must consider the following factors:

---

[7] The stated purpose of the act "is to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual." Section 5-37.3-2.

"(1)   The particular purpose for which the information was collected;
"(2)   The individual's reasonable expectation of privacy in the information;
"(3)   The degree to which disclosure of the information would embarrass, injure, or invade the privacy of the individual;
"(4)   The effect of the disclosure on the individual's future health care;
"(5)   The importance of the information to the lawsuit or proceeding; and
"(6)   Whether the information is available from another source, including Rule 35 of the Superior Court Rules of Civil Procedure."

It is only after the court conducts this requisite analysis, and balances the requesting party's need for disclosure with the individual's right to privacy, that the individual's confidential health care information may be disclosed in a judicial proceeding.  Section 5-37.3-6.1(d), (e).

In the case before us, applicant sought access to Reverdes' medical, psychiatric, and psychological records—information which clearly falls within the definition of "[c]onfidential health care information" under the act.   Section 5-37.3-3(3)(ii).   "As such, the requested information, even though it may be subpoenaed pursuant to valid legal process, is presumptively private, confidential, and privileged."  State v. Brown, 709 A.2d 465, 472 n.8 (R.I. 1998) (citing Washburn v. Rite Aid Corp., 695 A.2d 495, 500 (R.I. 1997) (noting that "'mere receipt of a valid subpoena does not negate [the] privilege' against unauthorized disclosure of medical records and does not give a party 'carte blanche to publish the information willy-nilly to third parties'")).

Therefore, before obtaining access to the records that are the subject of this case, it was incumbent upon the applicant to demonstrate that the information sought was relevant to the proceedings, and that "the need for the information clearly outweigh[ed] the privacy interest of the individual."   Section 5-37.3-6.1(d).   The trial justice also was required to conduct the balancing test set forth in § 5-37.3-6.1(e) before ordering the release of that information.  In this case, the trial justice appropriately conducted an in camera inspection of the medical records and

- 8 -

determined what portion of those records should be disclosed. However, he did this in accordance with Rule 26 without complying with § 5-37.3-6.1(e). Accordingly, we are satisfied that it was error for the trial justice to order the release of Reverdes' health care records without first conducting the necessary statutory analysis.

## Conclusion

For the reasons set forth herein, we vacate the order and remand the case to the Superior Court for additional findings consistent with this opinion.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     Jorge M. DePina v. State of Rhode Island.

**CASE NO:**     No. 2011-259-Appeal.
(PM 03-3727)

**COURT:**     Supreme Court

**DATE OPINION FILED:**   December 6, 2013

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Edward C. Clifton

**ATTORNEYS ON APPEAL:**

For Appellant:  John B. Lawlor, Jr., Esq.

For Applicant:  Danielle R. Menard, Esq.