Norman LAURENCE

v.

Gretchen J. NELSON.

No. 2000–295–APPEAL.

Supreme Court of Rhode Island.

Nov. 21, 2001.

Norman Laurence, for plaintiff.

Gretchen J. Nelson, for defendant.

BEFORE: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Did the Family Court err in denying child visitation to a convicted murderer serving a mandatory life sentence without the possibility of parole? After reviewing the trial justice's decision, the record in this case, the parties' written submissions, and their oral arguments, we answer this question in the negative. For the reasons explained below, we are of the opinion that the trial justice acted within his discretion in concluding that it was not in the child's best interests to allow the imprisoned father to have visitation with the child at this time.

The plaintiff, Norman Laurence (Laurence), appeals *pro se* from a Family Court judgment denying him visitation with his son, who was born on September 17, 1994. A single justice of this Court ordered the parties to show cause why the issues raised in this appeal should not be summarily decided. Because they have not done so, we decide the appeal at this time.

The plaintiff and defendant Gretchen J. Nelson (Nelson) are the parents of the child. Although they lived together with their son until February 1997, they never married. In May 1997, after his conviction for first-degree murder, Laurence began serving a sentence of life without the possibility of parole. Initially, Nelson took the boy to visit Laurence in prison because she wanted them to continue their father-son relationship. But she soon began to observe signs of mental instability in Laurence, so she stopped visiting him for a time. After he was transferred to high security, however, she resumed her visits because she believed that it was a safer environment to do so. But her fear of Laurence eventually caused her to discontinue taking her son to visit his father in prison. According to Nelson, the child did not seem interested in seeing his father and it was "extremely stressful" for her to continue the visits. In addition, Nelson did not believe that Laurence's "strange thoughts and the violent things that he thinks about" were appropriate for a young child to hear.

Ultimately, Laurence filed a motion for visitation. Nelson opposed the motion and asked that she be awarded sole custody of the child. Following a hearing, the trial justice issued a written decision in which he denied Laurence's request for visitation, and granted Nelson sole custody of the child. Although he found that visitation would be detrimental to the child, the trial justice ordered that Laurence be allowed to maintain written contract with his son through cards and letters.

 Visitation rights are strongly favored and should be denied only in situations in which the child's physical, mental, or moral health would be endangered by contact with the parent. *Suddes v. Spinelli*, 703 A.2d 605, 607 (R.I.1997); *see also Seravo v. Seravo*, 525 A.2d 922, 926 (R.I. 1987). We review a Family Court visitation decision to determine whether the trial justice abused his or her discretion. *See Silvia v. Silvia*, 711 A.2d 1149, 1150 (R.I. 1998) (mem.). A trial justice's findings in this regard will not be disturbed on appeal unless he or she overlooked or misconceived evidence or was clearly wrong. *Id.* (citing *Burrows v. Brady*, 605 A.2d 1312, 1317 (R.I.1992)).

Laurence cites *Hervieux v. Hervieux*, 603 A.2d 337 (R.I.1992) (per curiam), in

support of his appeal. In that case, this Court overturned a trial justice's denial of visitation rights based solely upon the father's incarceration. The trial justice had stated that it was his "philosophy" not to order visitation when a parent was incarcerated. *Id.* at 338. But this Court noted that the evidence in that case indicated that the father's relationship with his children was "warm and loving." *Id.* Apart from the father's incarceration, there was nothing else in the record to support a denial of visitation. In the present case, however, unlike *Hervieux*, the trial justice found that the circumstances were "different and extreme." He concluded that, at this stage in the child's life, the boy's mental and moral health would be endangered by further contact with Laurence at the Adult Correctional Institutions (ACI). Given this finding, *Hervieux* is not controlling here.

■ Laurence raises numerous issues regarding the conduct of the Family Court hearing and the propriety of that court's decision. After carefully considering each of them, we discern no merit to his arguments. The trial justice did not delay the hearing on Laurence's motion for visitation until after his criminal prosecution, so that his conviction could be used against him. When the case came before the court, Nelson suggested that the court wait until after the criminal trial to hear the visitation case. But the trial justice did not agree, and he allowed Laurence to begin presenting his case on that day.

It also appears that Laurence may have sent motions directly to the trial justice, rather than to the court via the clerk's office. The trial justice indicated that he would not examine ex parte communications and directed him to file his motions with the clerk of the court. Laurence argues that his motion for a new trial based upon newly discovered evidence was not heard. The Family Court file, however, does not contain a copy of his new trial motion. Moreover, the evidence relied upon by Laurence in support of his motion would not have justified a new trial.

Our review of the trial transcript indicates that the trial justice gave Laurence wide latitude to present his case. He was allowed to testify on his own behalf, to call witnesses, and to cross-examine defendant's witnesses. For example, at one point Laurence indicated that he wanted to call a witness named Albert Jacques, an ACI inmate who was then in the courthouse but was scheduled to be returned to prison. Although Jacques could not be held at that time, the trial justice told Laurence that he could subpoena him for another hearing. But Laurence rested his case without attempting to call this witness again or arranging for him to be subpoenaed. On another occasion, when Laurence asked to make an offer of proof but the trial justice denied the request, he was allowed to explain the question he would ask, the response he would elicit, and what he hoped to prove with this evidence. The trial justice allowed Laurence to finish his statement. In sum, our review of the record shows that he was given ample opportunity to present his case.

■ Laurence also alleges numerous erroneous evidentiary rulings during the trial as grounds for his appeal. After reviewing each of them we conclude they do not constitute reversible error. For example, he argues that he was not allowed to impeach Nelson's credibility by questioning her regarding her sexual conduct. But the transcript indicates that he did cross-examine Nelson concerning her alleged sexual conduct. On at least two occasions, Laurence asked Nelson about an instance in which he says he returned home from work to find two maintenance men, undressed, in the bathroom, a half-smoked

marijuana cigarette in the kitchen, and Nelson in the bedroom getting dressed. Nelson denied the allegations, stating that it was "part of [Laurence's] imagination." Laurence also questioned Nelson about alleged affairs with an attorney and with several men in Connecticut. Indeed, he ultimately wrung several admissions from Nelson on this score that served to damage her credibility. Thus, he was given ample opportunity to cross-examine Nelson regarding her alleged sexual misconduct. Nevertheless, it appears to us that the trial justice correctly determined that this line of questioning was largely irrelevant to the issue of whether visitation was in the best interests of the child at this time. "It is well settled that questions pertaining to the relevancy of evidence are left to the sound discretion of the trial justice." *State v. Cote*, 691 A.2d 537, 543 (R.I.1997) (citing *State v. Tempest*, 651 A.2d 1198, 1215 (R.I.1995)).

In his decision, the trial justice found that there was some evidence of distorted thinking on Laurence's part. In addition to a complaint that Laurence had filed on behalf of himself and the child against Nelson and others, the trial justice noted that Nelson had testified that Laurence had made accusations against her to the child. Nelson testified that he had sent "not nice mail" about her to the boy and she was in fear that Laurence would become violent during a visit. This evidence was relevant to assessing Laurence's conduct and to the issue of whether allowing him to visit with his son would be detrimental to the child's well-being.

Laurence also contends that he should not have been handcuffed during the trial, that the presence of the state police during the trial interfered with his rights, that Nelson improperly argued to the attorney general's office that it would have been detrimental to allow visitation, and that he was not afforded the same liberties during the trial as Nelson's attorney because he represented himself. The trial justice did not rely on any of these factors in making his decision to deny visitation. This case was not tried before a jury, so the question of any taint from the presence of police officers or the sight of a handcuffed plaintiff was essentially irrelevant. There is no indication that the trial justice allowed these factors to influence his decision.

Laurence further asserts that the trial justice overlooked or misconceived evidence in denying him visitation. He argues that the trial justice ignored the testimony of one of his witnesses, Jeffrey Broulette, a guard at the ACI, who testified that Laurence appeared to be normal. Whether an individual appears to be normal to a lay witness, however, does not provide conclusive proof that he should be allowed to visit with his son.

Although there is a strong presumption in favor of visitation, the trial justice found the circumstances of this case to be "different and extreme." Laurence emphasizes that his son still wished to see him. Even if this were true, however, it was the duty of the court to determine whether visitation served the best interests of the child. Here, we are of the opinion that the trial justice was not clearly wrong and did not abuse his discretion in deciding that it would not be in the child's best interests to visit with his father at the ACI at this time.

Because there is record support for the trial justice's conclusions and because they do not appear to us to be clearly erroneous, we affirm the Family Court's judgment and deny this appeal.