**Supreme Court**

No. 2015-309-C.A.

(P2/14-989AG)

|  |  |
|---|---|
| State | : |
| v. | : |
| Jonathan Martinez. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

Jonathan Martinez.                 :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on May 4, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The defendant, Jonathan Martinez, appeals from a judgment of conviction after a jury found him guilty of one count of possession of a controlled substance with intent to deliver, one count of possession of a firearm while in possession of a controlled substance with intent to deliver, and one count of conspiracy to possess a controlled substance with intent to deliver.  Before this Court, the defendant argues that the trial justice erred in not permitting him to present either an opening statement to the jury or oral argument in support of his motion for judgment of acquittal.  He also challenges a portion of the jury instructions and a statement made by the trial justice to the jury regarding the availability of transcripts during their deliberations.  After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time.  We vacate the judgment of conviction entered by the Superior Court.

**Facts and Travel**

The facts of this case are straightforward. During the course of a three-week surveillance of 30-32 Frederick Street in Providence, a narcotics detective from the Providence Police Department observed defendant—the target of the investigation—enter and exit the multi-family residence approximately five or six times. The detective also observed numerous individuals entering the premises and departing soon after—a pattern consistent with retail narcotics activity. On August 20, 2013, armed with an arrest and search warrant, detectives stopped defendant's vehicle less than a mile away from the premises, after having observed him leave the building and drive away with two men. The detectives arrested defendant and his passengers—his co-defendant, Felix Ramos (Ramos), and another individual. At that time, detectives seized a set of keys from defendant's person that subsequently unlocked an exterior door and a bedroom door in the apartment located on the second floor of 32 Frederick Street.

Thereafter, the detectives executed the search warrant for the second-floor apartment. Their search of the kitchen uncovered three bags of cocaine, which together weighed 0.5 grams, and a plate containing 5.2 grams of loose crack cocaine. In the bedroom—where the door was unlocked by using one of the keys seized from defendant—detectives discovered a gun case containing a loaded semi-automatic handgun and a receipt for the gun with defendant's name on it. From another bedroom, detectives seized three bags of heroin, which weighed a total of 1.7 grams. The bags had been stored in a small box containing loose rice, which—according to the testimony of the detective who seized it—often is utilized by drug dealers to keep heroin dry before sale. Also in that bedroom, detectives found two bottles of clonazepam and diazepam, which were prescribed to individuals other than defendant and Ramos. The detectives also seized from the apartment a digital scale, two .45-caliber ammunition rounds, two boxes of

sandwich bags and a glass bottle containing several "piece[s] of plastic from * * * sandwich fold-top bag[s],"[1] a 100-gram weight, a calculator, large sums of cash,[2] and a suspected cutting agent.[3]

The state charged defendant with three counts of possession of a controlled substance with intent to deliver, in violation of G.L. 1956 § 21-28-4.01(a)(4)(i) (count 1—heroin; count 2—cocaine; and count 3—clonazepam); one count of possession of a firearm while possessing a controlled substance with intent to deliver, in violation of G.L. 1956 § 11-47-8(c) (count 4); and one count of conspiracy to possess a controlled substance with intent to deliver, in violation of § 21-28-4.08 (count 5).

A jury trial was held in Providence County Superior Court in November 2014. At trial, after the prosecution presented its opening statement, defense counsel indicated that he intended to address the jury as well. The following exchange ensued at sidebar:

"THE COURT: Are you anticipating putting any evidence on?

"[DEFENSE]: I may, Judge.

---

[1] At trial, Detective Leo Pichs (Det. Pichs) of the Providence Police Department's narcotics and organized crime bureau testified that, in order to prepare crack cocaine for street-level distribution, the drugs are

"put into a sandwich bag. For instance, a fold-top sandwich bag[.] [Y]ou stick [the narcotics] in the corner of the sandwich bag, and then you * * * twist the bag until you just have the bottom corner not very tight, then you put it into a knot to seal the corner and then you cut off the top, the excess portion, the waste."

The waste, or "cutoffs," typically are not passed onto the buyer but instead are retained by the dealer. Detective Pichs identified the pieces of plastic stored in the glass bottle as "cutoffs."

[2] The detectives also seized $469 in cash from a second vehicle registered to defendant.

[3] Detective Martin W. Hames, a narcotics officer with the Providence Police Department, described a cutting agent as "usually a dietary supplement that drug dealers use to mix with their products" for the dual effect of adding bulk and diluting the drug.

> "THE COURT: That's not going to be enough to get you past the threshold.
>
> "[DEFENSE]: I mean, my intention is to point out what the [s]tate is not going to present. [The prosecutor] laid out a bunch of evidence he's going to present, and I want the jury to know what they're not going to hear during the [s]tate's case."

The trial justice proceeded to cite case law from this jurisdiction that addresses the permissible scope of an opening statement, and he noted two cases that provide that parties may discuss only the affirmative evidence that they intend to introduce in their cases-in-chief or to elicit on cross-examination. See State v. Bryant, 888 A.2d 965, 971 (R.I. 2006); State v. Turner, 746 A.2d 700, 704 (R.I. 2000). Thereafter, the following colloquy between defense counsel and the trial justice transpired:

> "[DEFENSE]: [T]he * * * case you cited said if there's evidence that I expect to bring out in cross-examination[,] then I can open. I expect that there's going to be things that * * * I'm going to bring out on cross[-examination] the [s]tate is not going to be able to establish.
>
> "THE COURT: I'm not going to permit it."

Consequently, defense counsel did not make an opening statement, and the prosecution commenced with its case-in-chief.

The defendant's primary strategy at trial was to argue that the state had failed to establish that he exercised control over the apartment from which the contraband was seized. The jury was not persuaded; on November 24, 2014, it convicted defendant on counts 2, 4, and 5. The trial justice imposed three sentences of eight years at the Adult Correctional Institutions, with two years to serve and six years suspended with probation. The sentences imposed for counts 2

and 4 run consecutively, and the sentence imposed for count 5 runs concurrently with the sentence imposed for count 2.[4] This timely appeal ensued.

The defendant raises a bevy of issues before this Court. However, we address only his argument that the trial justice erred in refusing to allow him to make an opening statement to the jury. It is the sole issue that merits our consideration,[5] and, for reasons set forth below, it also is dispositive of the appeal.

**Standard of Review**

The decision by a trial justice whether or not to allow a criminal defendant to deliver an opening statement is a question of law subject to <u>de novo</u> review by this Court. <u>Bryant</u>, 888 A.2d at 969.

---

[4] We pause to note that the Judgment of Conviction and Commitment, issued by the Superior Court on March 18, 2015, erroneously listed count 4 as possession of a firearm during the commission of a violent crime. The defendant was charged with that offense in count 4 of the original criminal information, but count 4 subsequently was amended to the offense of possession of a firearm while possessing a controlled substance with intent to deliver.

[5] The defendant additionally asserts on appeal that the trial justice erred in ruling on defendant's motion for judgment of acquittal without first hearing oral argument, in instructing the jury regarding defendant's decision not to testify at trial, and in informing the jury that transcripts would not be available during its deliberations. None of these issues has been preserved for our review. <u>See</u> <u>State v. Gregson</u>, 113 A.3d 393, 398 (R.I. 2015) ("[This] Court 'shall not review issues that were not presented to the trial court in such a posture as to alert the trial justice to the question being raised[.]'" (quoting <u>Berard v. HCP, Inc.</u>, 64 A.3d 1215, 1219 n.2 (R.I. 2013))).

With respect to defendant's argument that his attorney was precluded from orally arguing his motion for judgment of acquittal, the record demonstrates that no objection was made. The defendant asserts that his attorney did not object because he did not wish to annoy the trial justice. Unfortunately, the failure to object for strategic reasons is insufficient to overcome the hurdle of this jurisdiction's well-established raise-or-waive rule. <u>State v. Fry</u>, 130 A.3d 812, 825-26 (R.I. 2016).

As to the remaining two issues, defendant concedes that he did not object to either the jury instructions or the trial justice's comments regarding the availability of transcripts.

**Analysis**

Rule 26.2 of the Superior Court Rules of Criminal Procedure permits a defendant to make an opening statement either immediately before the prosecution presents its evidence or just before the presentation of the defense. The purpose of an opening statement is to concisely inform the jury of the issues raised in the case and of the evidence to be introduced by the parties. State v. DePina, 810 A.2d 768, 774 (R.I. 2002). An opening statement does not provide a defendant with an opportunity to argue the merits of the evidence or to impeach the state's witnesses. Id.; State v. Byrnes, 433 A.2d 658, 664 (R.I. 1981). Instead, the scope of an opening statement is restricted to a summation of the evidence that the parties intend to introduce through witness testimony. DePina, 810 A.2d at 774. This restriction is not limited to a party's case-in-chief and may embrace the state's case as well. Id. The evidence, or lack thereof, referred to in an opening statement "may include affirmative evidence that the defendant reasonably expects to solicit on cross-examination of a witness, provided that counsel brings that evidence to the trial court's attention." Id.

An opening statement may be precluded when a defendant who has not stated with certainty that he will present witnesses in his own defense also fails to "specify what affirmative evidence he reasonably expect[s] to solicit on cross-examination of the state's witnesses * * *." Bryant, 888 A.2d at 970; see id. at 971 (holding that the defendant did not have a right to present an opening statement where his attorney had informed the trial court that the defendant had not yet decided whether to present witnesses and she vaguely suggested that the opening statement would provide an "outline for the jury the facts that I think will be elicited * * * on cross-examination"); see also Turner, 746 A.2d at 703-04 (upholding the trial justice's refusal to allow the defendant to give an opening statement because he did not yet know whether he would call

witnesses and indicated to the court that he intended to elicit new evidence on cross-examination but refused to specify what that evidence would be).

For evidence to be affirmative, it must "[s]upport[] the existence of certain facts." Black's Law Dictionary 70 (10th ed. 2014); accord State v. Hass, 265 P.3d 1221, 1226 (Mont. 2011) (defining "affirmative evidence" as "evidence demonstrating that certain facts actually exist"). Generally, "[e]vidence suggesting that an alleged fact does not exist" is not affirmative, Black's Law Dictionary at 676 (defining "negative evidence"), and an offer of such evidence, standing alone, is insufficient to meet the threshold required for a party to be permitted to give an opening statement, see DePina, 810 A.2d at 774-75. However, a negative assertion can constitute affirmative evidence under certain circumstances. Black's Law Dictionary at 676. For example, testimony that a witness did not observe the occurrence of an alleged event, on its own, is not affirmative evidence. See id. However, if the alleged event only could have transpired in a single location for a discrete duration of time and the witness observed that location in its entirety during the whole period of time in question, the witness's testimony to that effect qualifies as affirmative evidence that the event did not happen. Id.

In the case at bar, although defense counsel did not describe with specificity what evidence defendant planned to solicit on cross-examination, our review of the record demonstrates that he did not have the opportunity to do so. When defense counsel informed the trial justice that, "I expect that there's going to be things that * * * I'm going to bring out on cross[-examination] [that] the [s]tate is not going to be able to establish," it was incumbent upon the trial justice to inquire further. Instead, the trial justice summarily declared that he would not permit defendant to present an opening statement. Our review of the trial transcript leads us to conclude that the trial justice's summary determination deprived defendant of the opportunity to

make an offer as to precisely what evidence he intended to elicit. It was incumbent upon the trial justice to inquire further at this juncture and to allow defense counsel to provide a more detailed explanation. Cf. State v. Manning, 973 A.2d 524, 536 (R.I. 2009) (trial justice did not abuse his discretion in precluding question on cross-examination on the basis that it lacked probative value where the defendant was given "the opportunity to explain" why he believed his proposed question had probative significance); Laurence v. Nelson, 785 A.2d 519, 521 (R.I. 2001) (trial justice did not err in declining to allow the plaintiff to make an offer of proof where the plaintiff "was allowed to explain the question he would ask, the response he would elicit, and what he hoped to prove with this evidence[,] * * * [and was] allowed * * * to finish his statement").

Without the benefit of defense counsel's responses to further inquiry, we cannot conclude one way or another whether defendant reasonably expected to elicit affirmative evidence on cross-examination of the state's witnesses. However, since the mainstay of his defense was that he did not exercise control over the incriminating evidence seized, it is entirely conceivable that defendant intended to solicit negative assertions from the state's witnesses that—in this particular set of circumstances—would constitute affirmative evidence.

The state urges that the facts in this case are analogous to Byrnes, 433 A.2d at 664, in which this Court held that the defendant was not entitled to use an opening statement to direct jurors to "pay attention to such factors as the witnesses' demeanor, their prior criminal involvement, their explanation[s] about particular aspects of evidence which might be developed on cross-examination, and the reasons for any inconsistencies in their testimony." We disagree. Unlike the defendant in Byrnes, who sought to use his opening statement to discuss what is best classified as impeachment evidence, id., defendant in this case intended to address evidence that tended to show the absence of a prima facie case against him. Neither this evidence nor

defendant's theory at trial that he had not exercised control over the apartment was impeaching in nature. Consequently, the state's reliance on Byrnes is misplaced.

This case also differs from Bryant, 888 A.2d at 971, where the defendant's attorney informed the trial justice that her proposed opening statement would "outline for the jury the facts that I think will be elicited * * * on cross-examination." Indeed, the descriptions provided by the attorneys in both Bryant and the case at bar lacked specificity, but there exists a critical difference. Defense counsel in Bryant gave no hint as to what evidence she expected to bring out on cross-examination; she stated only, in a conclusory manner, that "facts * * * [would] be elicited." Id. Unlike the attorney in Bryant, defense counsel in this case attempted to make an offer: He pointed to potential negative assertions that would be made by the state's witnesses on cross-examination. Defense counsel "[brought the] evidence to the trial court's attention," DePina, 810 A.2d at 774, albeit somewhat nebulously, while the attorney in Bryant did not.

This Court is mindful that—although the burden of proof in a criminal trial rests squarely on the state—a trial is the accused's only opportunity to defend himself against the substantive charges levied by the prosecution. "It is * * * the defendant's trial." State v. Arciliares, 108 A.3d 1040, 1052 (R.I. 2015) (Goldberg, J., concurring). The trial justice erred in this case by not permitting the defendant to make an opening statement without affording him the opportunity to articulate the nature of the affirmative evidence he intended to elicit on cross-examination. Since the defendant described potentially affirmative evidence in a less-than-precise fashion, further probing by the trial justice was warranted to ensure that the defendant would not summarily— and, perhaps, erroneously—be denied the opportunity to present an opening statement.

**Conclusion**

For the reasons articulated above, we vacate the judgment of the Superior Court and remand the case to that tribunal for a new trial. The papers in this case may be remanded to the Superior Court.



**TITLE OF CASE:**        State v. Jonathan Martinez.

**CASE NO:**        No. 2015-309-C.A.
(P2/14-989AG)

**COURT:**        Supreme Court

**DATE OPINION FILED:**        July 7, 2016

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**        Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

                For State:   Christopher R. Bush
                                Department of Attorney General

                For Defendant:   John F. Cicilline, Esq.