January 27, 2021

**Supreme Court**

No. 2018-64-C.A.
(P2/15-553A)

|  |  |  |
|---|---|---|
| State | : |  |
| v. | : |  |
| Andrew Smith. | : |  |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Andrew Smith. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  The defendant, Andrew Smith, appeals from a judgment of conviction following a jury trial for possession of child pornography in violation of G.L. 1956 § 11-9-1.3(a)(4).  For that offense, the defendant was sentenced to a term of imprisonment of five years, with three years to serve and two years suspended, with probation.  For the reasons set forth herein, we vacate the judgment of the Superior Court.

## I

## Facts and Travel

This case was spawned by an unrelated investigation in Arizona that was conducted by the Federal Bureau of Investigation (FBI) involving the distribution of

child pornography. That investigation yielded an incriminating evidentiary trail against a number of individuals, one of whom was defendant.

The saga begins in August 2013, when the FBI executed a search warrant at the home of William Moser, who resided in Peoria, Arizona. The search uncovered a significant cache of child pornography, as well as evidence related to the electronic dissemination of child pornography to various email addresses. One of those email addresses that had been in receipt of child pornography was generated by Craigslist to an unknown user.[1] As part of a far-reaching effort to track and prosecute the recipients of the child pornography that had been disseminated by Mr. Moser, the FBI, after serving administrative warrants on Craigslist, Google, and Cox Communications, determined that the unknown Craigslist user was associated with a "true e-mail address," coletrickle234@gmail.com, which was authenticated from an IP address registered to defendant's wife, Terry Smith.[2] Thus, the evidence led the FBI from its original investigation in Arizona to defendant's front door in Cranston.

---

[1] Craigslist is an internet classifieds service. *J.S. v. Village Voice Media Holdings, L.L.C.*, 359 P.3d 714, 731-32 (Wash. 2015).

[2] Agent Daniels, a special agent for the FBI and witness for the state, explained that whenever a Craigslist user creates a posting and begins communicating through the Craigslist e-mail server, the server remains anonymous so as to protect the identity of the user by shielding the actual, "true email address."

The defendant was tried in 2017 on one count of possession of child pornography, at which time he chose to proceed *pro se*. During the trial, there can be no doubt that defendant tested the considerable patience of the trial justice. The defendant was admonished several times by the trial justice for his inappropriate behavior during trial, characterized by frequent outbursts, speaking out of turn, and accusing the witnesses, the state, and the trial justice of conspiring against him.[3]

Before this Court, defendant offers three arguments, each of which he maintains should cause his conviction to be vacated. First, he argues that the trial justice wrongly precluded him from making an opening statement to the jury. Second, he contends that the trial justice erred when he instructed the jury that the parties had stipulated that the images in question met the definition of child pornography when there was no such agreement on the record. The defendant also argues that this error is of sufficient gravity to the fundamental fairness of the trial that we should overlook the lack of a timely objection to the instruction. And third, defendant maintains that the trial justice should have suppressed the fruits of a search of defendant's computer because the judicial officer who signed the search warrant was not authorized to sign a warrant.

---

[3] We pause here to express our admiration for the way the trial justice conducted this trial. The trial justice exhibited a great deal of patience and courtesy towards a self-represented litigant who was disruptive and difficult to handle.

## II

## The Opening Statement

The defendant argues that the trial justice erred by precluding him from delivering an opening statement.  On the day prior to the start of trial, after voir dire, the trial justice spoke with the state and defendant and explained how the trial would proceed. The following discussion ensued:

> "THE COURT: Are you going to testify in this case?
>
> "[DEFENDANT]: I don't think so. * * *
>
> "THE COURT: * * * You don't have any witnesses you're going to call, right?
>
> "[DEFENDANT]: No, just the witnesses [the state has] already brought.
>
> "THE COURT: What I'm going to do is, I'm going to let the State open, but if you don't have any evidence, I'm going to instruct—and, by the way, you will get a copy of the instructions along with [the state]."[4]

The following day, immediately after the state delivered its opening statement, defendant, too, sought to offer an opening statement.  The defendant and the trial justice then engaged in the following colloquy:

---

[4] After a review of the entirety of the record, it appears that this initial discussion served as the eventual basis upon which the trial justice relied to bar defendant from delivering an opening statement.  However, in that colloquy, the trial justice quickly pivoted to the topic of jury instructions, and there was no further dialogue regarding opening statements.

"[DEFENDANT]: I would like to make an opening statement also, your Honor.

"THE COURT: We talked about this yesterday afternoon.

"[DEFENDANT]: I have a right to make an opening statement according to the Rules of Court Procedure.

"THE COURT: Sit down. Sit down right now. We were on the record yesterday afternoon. Based on what you told me, I'll let you wait until it is your time to make a case."

Later that day, during a break in the trial after the state's first witness had begun to testify, defendant again made it known to the trial justice that he wished to give an opening statement, and he complained that the trial justice had improperly denied him that opportunity. Explaining his earlier decision, the trial justice said, "Now, if you made it known to me yesterday that you were going to testify—and you certainly didn't have to—but I would have allowed you an opening statement." At that time, defendant then sought further clarification during the following exchange with the trial justice:

"[DEFENDANT]: Just so I understand this: If I agree to testify, then I am allowed to make an opening statement?

"THE COURT: Correct.

"[DEFENDANT]: If I don't testify, I can't make an opening statement?

"THE COURT: That's correct."

## A

## Standard of Review

"The decision by a trial justice whether or not to allow a criminal defendant to deliver an opening statement is a question of law subject to *de novo* review by this Court." *State v. Martinez*, 139 A.3d 550, 554 (R.I. 2016).

## B

## Analysis

Rule 26.2 of the Superior Court Rules of Criminal Procedure permits a defendant to make an opening statement either before the state introduces its evidence or before a defendant presents his own case. However, opening statements are not carte blanche invitations to talk. "The purpose of an opening statement is to concisely inform the jury of the issues raised in the case and of the evidence to be introduced by the parties." *Martinez*, 139 A.3d at 554. "An opening statement does not provide a defendant with an opportunity to argue the merits of the evidence or to impeach the state's witnesses." *Id.* "Instead, the scope of an opening statement is restricted to a summation of the evidence that the parties intend to introduce through witness testimony." *Id.* "This restriction is not limited to a party's case-in-chief and may embrace the state's case as well." *Id.* "The evidence, or lack thereof, referred to in an opening statement 'may include affirmative evidence that the defendant reasonably expects to solicit on cross-examination of a witness, provided that

counsel brings that evidence to the trial court's attention.'" *Id.* (quoting *State v. DePina*, 810 A.2d 768, 774 (R.I. 2002)).

Thus, a defendant's right to deliver an opening statement is not unqualified. We have said that "[a]n opening statement may be precluded when a defendant who has not stated with certainty that he will present witnesses in his own defense also fails to 'specify what affirmative evidence he reasonably expect[s] to solicit on cross-examination of the state's witnesses.'" *Martinez*, 139 A.3d at 554 (brackets and deletion omitted) (quoting *State v. Bryant*, 888 A.2d 965, 970 (R.I. 2006)). Affirmative evidence is evidence that "support[s] the existence of certain facts." *Id.* (quoting Black's Law Dictionary 70 (10th ed. 2014)). It follows that negative assertions may constitute affirmative evidence under certain circumstances. *Id.*

This Court held in *Martinez* that a trial justice is cloaked with a duty to inquire further when a defendant who wishes to make an opening statement has informed the court of the nature of his defense but has not stated with certainty what affirmative evidence he expects to solicit. *Martinez*, 139 A.3d at 555. Such an inquiry operates to prevent a court from summarily disallowing a defendant to impart an opening statement without the full knowledge of that defendant's defense. *See id.* In *Martinez*, we held that the trial justice erred when he did not inquire further before denying the defendant the opportunity to deliver an opening statement after the defendant informed the trial justice, "I expect that there's going to be things that

* * * I'm going to bring out on cross[-examination that] the [s]tate is not going to be able to establish[.]" *Id.*

Our examination of the record in this case leads us to conclude that defendant was not given a fair opportunity to describe with specificity what evidence he planned to elicit from the state's witnesses. On the day prior to trial, he was asked whether he intended to testify and whether he intended to call any witnesses. The defendant was never asked whether he wished to present an opening statement. The following day, when defendant did indicate his desire to make an opening statement, the trial justice told him that they had "talked about this yesterday afternoon" and "[b]ased on what you told me, I'll let you wait until it is your time to make a case." This, in our opinion, was error.

Under these circumstances, we conclude that defendant was not given a fair "opportunity to articulate the nature of the affirmative evidence he intended to elicit on cross-examination." *Martinez*, 139 A.3d at 556. In our opinion, the trial justice's query—"You don't have any witnesses you're going to call, right?"—was not a sufficient inquiry and the trial justice should have inquired further when the defendant responded, "No, just the witnesses [the state's] already brought." Further inquiry would have allowed defendant to provide a more detailed explanation of what evidence, if any, he anticipated eliciting from the state's witnesses on cross-examination and would have armed the trial justice with the information that was

necessary to determine whether affirmative evidence could, in fact, have been elicited.  As this Court's precedent makes plain, it is that information that establishes the proper basis for determining whether a defendant may offer an opening statement.

After the trial justice made his initial determination that defendant would not be allowed to give an opening statement, he later informed defendant that only by testifying would he be allowed to deliver an opening statement.  Although it is true that that final colloquy occurred after the state's first witness had begun to testify, it was nonetheless consistent with the two earlier discussions between the trial justice and defendant.  This, in our opinion, was error.

The state argues that our holding in *Martinez*, in which we distinguished the facts of that case from those in *Bryant*, cited *supra*, stands for the proposition that a defendant must "attempt" to make an offer of proof before a trial justice's duty to inquire is triggered.  However, that argument overlooks the key holding of *Martinez*.  In *Bryant*, this Court affirmed a trial justice's decision to preclude a defendant from delivering an opening statement where, when given the opportunity to explain what evidence the defendant anticipated on eliciting during cross-examination of the state's witnesses, the defendant's counsel merely indicated that the opening statement would "outline for the jury the facts that I think will be elicited * * * on cross examination" without any suggestion as to the nature of those facts. *Bryant*,

888 A.2d at 971. Although it is true that, in *Martinez*, we observed that a defendant must attempt to make an offer "as to precisely what evidence he intend[s] to elicit[,]" what was central to our holding was that a defendant who indicates an intent to elicit evidence on cross-examination must be given an opportunity to provide a more detailed explanation of such evidence before he is precluded from making an opening statement. *See Martinez*, 139 A.3d at 555. Only then can a trial justice properly assess whether the proffered testimony is in fact affirmative evidence. *Id*. That did not occur here.

The state further argues that any evidence that defendant sought to elicit on cross-examination would have been insufficient to entitle him to deliver an opening statement because the evidence would have constituted "negative proof." Although we have noted that "[g]enerally, 'evidence suggesting that an alleged fact does not exist' is not affirmative," this Court has not yet had the occasion to determine whether certain "negative assertions" offered by a defendant may be considered "affirmative evidence[.]" *Martinez*, 139 A.3d at 554 (brackets omitted). Here, defendant was adamant that the photographic exhibits introduced at trial by the state did not constitute child pornography, which is what he wished to establish through cross-examination of the state's witnesses.[5] We conclude that evidence tending to

_____

[5] The defendant attempted to establish that the photographic exhibits were not sufficiently graphic to constitute child pornography in the following exchange on cross-examination with Agent Daniels:

establish the nonexistence of an element of a charge against a criminal defendant constitutes affirmative evidence. It follows, then, that evidence which would demonstrate that the photographs alleged by the state to be child pornography were not, in fact, child pornography qualifies as affirmative evidence to rebut a criminal charge for possession of child pornography.

Because it is our opinion that the trial justice erred when he did not inquire of defendant before he denied him an opportunity to address the jury with an opening statement, we vacate the judgment of conviction.

## III

## Other Issues

In view of the fact that we vacate the conviction on the issue of the opening statement, we need not, and shall not, reach the other issues raised by the defendant on appeal.

---

"[DEFENDANT]: Is she touching her genitalia?

"[AGENT DANIELS]: No.

"[DEFENDANT]: Is there anything touching her genitalia? Is there anybody else in the picture?

"[AGENT DANIELS]: No.

"[DEFENDANT]: Is she performing a sexual act?

"[AGENT DANIELS]: No, she is not."

# IV

## Conclusion

For the reasons stated in this opinion, we vacate the judgment of the Superior Court. The record shall be returned to the Superior Court.

Justice Flaherty participated in the decision and authored this opinion prior to his retirement.

**Justice Goldberg, dissenting.** I respectfully dissent from the decision of the majority because I do not agree that the defendant was entitled to make an opening statement in the context of this case. Unquestionably, the trial justice's decision was not an abuse of discretion and the judgment should be affirmed.

On February 25, 2015, defendant was charged with one count of possession of child pornography, in violation of G.L. 1956 §§ 11-9-1.3(a)(4) and 11-9-1.3(b). The defendant appeared *pro se*. Before the trial commenced, and after difficult pretrial proceedings, the trial justice asked defendant, "Are you going to testify in this case?" The defendant responded that he did not "think so[,]" and asked the trial justice if he could exercise his Fifth Amendment right "at any time[.]" The trial justice demonstrated a remarkable degree of patience and responded that he wanted "to clear up * * * [a] couple of things[,]" and inquired if defendant intended to call

- 12 -

any witnesses. The defendant answered that he did not intend to call any witnesses, "just the witnesses [the state] already brought." As a result of defendant's representation, the trial justice explained that he would permit the state to make an opening statement and then call its witnesses, and defendant would be able to question those witnesses on cross-examination. The trial justice also informed defendant that he could wait until after the state rested its case to decide whether he wanted to testify.

The next morning, the jury was sworn and trial commenced. The state gave an opening statement, at the conclusion of which the trial justice invited the state to call its first witness. However, the trial justice was interrupted by defendant, who stated that he "would like to make an opening statement also[.]" The defendant's habit of interrupting the trial justice was incessant, and the previous day the trial justice had instructed defendant to stop interrupting him, and that the next interruption could result in a contempt finding. Despite this distressing conduct with the jury present, the trial justice patiently reminded defendant that they had discussed whether he could make an opening statement the previous day. The defendant insisted that he had "a right to make an opening statement[.]"

As the majority acknowledges, this defendant was disruptive and, at times, uncontrollable in his outbursts. He was obstreperous and intractable before the jury. However, the trial justice made every effort to afford this *pro se* litigant the same

respect a member of the bar would enjoy. Remarkably, the trial justice extended the courtesy of allowing defendant to approach the sidebar throughout the proceedings and provided defendant with a pretrial order that detailed the court's protocols and expectations, and which specifically instructed the parties that anyone asserting an objection who wished to provide the court with additional information should ask, "May I be heard?" To no avail. Despite the trial justice's dauntless efforts, defendant persisted with numerous interruptions, inappropriate comments, and tangential diatribes.

Notably, defendant claimed that he had been threatened by judges; he requested that the trial justice show the relevant photographs to every person in the courtroom so that they could vote on whether the photographs were phony because "[t]his is a democracy"; and he demanded that the trial justice issue a written decision on defendant's motion for a stay of the trial so that he could "put an injunction against this court system." Quite understandably, the trial justice was wary as to what defendant would do or say in front of the jury. Rightfully so. Accordingly, faced with defendant's threatening and volatile behavior—and with knowledge of defendant's previous outbursts—the trial justice instructed defendant to "[s]it down right now." It is my opinion that, based on defendant's representation that he did not intend to call witnesses or testify in this case, the trial justice did not err. The defendant did not ask to go to the sidebar, the state called its first witness,

and that ship sailed.  The state's case commenced. The subsequent colloquies—relied upon by defendant and the majority—are irrelevant.  This is the way of a criminal trial.  I see no error.  The majority, on the other hand, has fashioned an additional requirement on our trial bench under a simple rule of criminal procedure.

The state called four witnesses, and defendant cross-examined each witness. The defendant asked an agent from the Federal Bureau of Investigation, "How come the FBI didn't investigate Hillary Clinton's unsecured e-mails in light of the 2012 Benghazi attack"; asked the witnesses whether they masturbated to adult pornography; asked a federal agent whether he had ever cheated on his wife; and told a federal agent during cross-examination, "The whole time you were talking to me [during a knock and talk] you had your finger in your mouth like you were a homosexual little boy."  He also referred to a detective from the Rhode Island State Police as "an American terrorist[,]" and he assailed his own estranged wife with irrelevant and discourteous questions.  Despite defendant's total disregard for decorum, the trial justice did not admonish him before the jury and consistently and repeatedly brought defendant to the sidebar in an attempt to control his behavior. This trial was a white-knuckle sail for this trial justice.  The defendant chose not to testify, did not present any witnesses, and made a closing argument.  A unanimous jury found defendant guilty of possession of child pornography.

We review this issue on a *de novo* basis to determine whether the trial justice abused his discretion under these circumstances. *See State v. Martinez*, 139 A.3d 550, 554 (R.I. 2016). In accordance with Rule 26.2 of the Superior Court Rules of Criminal Procedure, criminal defendants are not guaranteed an opening statement before the state's case. Rather, "[i]f a defendant *is permitted* to make an opening statement, the defendant may do so just prior to the introduction of evidence by the State, or just prior to presenting the defendant's case." Super. R. Crim. P. 26.2 (emphasis added). Thus, there is no absolute right to make an opening statement, and the accused has the burden to persuade the court that he or she qualifies to do so by pointing to specific affirmative evidence.[1] Indeed, this Court has recognized that "[a]n opening statement may be precluded when a defendant who has not stated with certainty that he will present witnesses in his own defense also *fails to 'specify what affirmative evidence he reasonably expects to solicit on cross-examination of the state's witnesses.'*" *Martinez*, 139 A.3d at 554 (emphasis added) (brackets and deletion omitted) (quoting *State v. Bryant*, 888 A.2d 965, 970 (R.I. 2006)). This limitation on a defendant's ability to make an opening statement preserves its narrow

---

[1] This is reinforced by the 2017 amendment to Rule 26.2, which was in effect at the time of defendant's trial. The 2017 amendment substituted "is *permitted* to make an opening statement" in place of "*chooses* to make an opening statement," seemingly reinforcing this Court's pronouncements which have held that a defendant does not have an absolute right to make an opening statement and that a trial justice is vested with the discretion to allow or disallow an opening statement.

function, which "is to apprise the jury with reasonable succinctness what the issues are in the case that is about to be heard and what evidence the prosecution and the defense expect to produce at trial in support of their respective positions." *State v. Byrnes*, 433 A.2d 658, 664 (R.I. 1981); *see also Martinez*, 139 A.3d at 554 ("[T]he scope of an opening statement is restricted to a summation of the evidence that the parties intend to introduce through witness testimony."). The majority's reliance on *Martinez* to suggest that Rule 26.2 has been expanded in any way is simply incorrect.

This Court's previous holdings with respect to a criminal defendant's right to make an opening statement make this clear. Whether the defendant is entitled to make an opening statement is contingent upon a defendant first articulating to the trial justice, *with specificity*, what affirmative evidence he or she plans to present. In *Bryant*, this Court held that, consistent with settled precedent, a defendant had no right to make an opening statement when he failed to indicate to the trial justice the exact affirmative evidence he would present and instead relied on his counsel's general statements that she would "outline for the jury the facts that [she thought would] be elicited * * * on cross-examination[.]" *Bryant*, 888 A.2d at 971. This Court recognized that defense counsel failed to "specify exactly what affirmative evidence she reasonably expected to elicit on cross-examination[,]" and thus was precluded from making an opening statement. *Id.* By way of contrast, the error in

- 17 -

*Martinez* arose when the trial justice denied the defendant an opening statement without an opportunity to articulate with specificity what he intended to present.

In *Martinez*, this Court addressed the responsibilities of a trial justice when confronted with a criminal defendant who seeks leave to make an opening statement. *Martinez*, 139 A.3d at 555. Contrary to the majority's interpretation, *Martinez* does not place a burden on a trial justice to invariably probe what information the accused intends to solicit in cross-examination. That is counsel's responsibility. Rather, the central holding of *Martinez* establishes that a trial justice's obligation to inquire further about evidence a defendant expects to elicit is triggered *only if* the defendant makes some offer of proof regarding the information he or she intends to elicit through cross-examination. *Id.* This is settled law.

Defense counsel in *Martinez* explicitly informed the trial justice that he intended "to point out what the state is not going to present[,]" and expected to bring out things on cross-examination that the prosecution would not be able to establish. *Martinez*, 139 A.3d at 553 (brackets omitted). We concluded that the trial justice abused his discretion when he summarily denied the defendant the opportunity to make an opening statement because the trial justice failed to afford the defendant an opportunity to set forth with specificity what evidence he planned to elicit. *Id.* at 555. Our holding in *Martinez* was inextricably tied to the defendant's attempt to make an offer that was foreclosed. *Id.* at 556 ("Unlike the attorney in *Bryant*, defense

counsel in this case attempted to make an offer[.]”). While *Martinez* may have alleviated the requirement that the offer of proof must be specific from the outset, it in no way relieved a defendant of the fundamental requirement that there be an offer of proof. *Id.* at 555-56.

Here, before the jury, defendant requested to make an opening statement directly after the state's opening statement. However, defendant never offered an explanation, specific or otherwise, regarding what evidence, if any, he intended to elicit through cross-examination. Rather, he simply stated that he "would like to make an opening statement" and, later, he in fact cited Rule 26.2 and declared that he had "a right to make an opening statement[.]" These broad statements did not contain any indication of the evidence defendant intended to produce through cross-examination or testimony. The defendant's assertions about his right to make an opening statement do not constitute an offer of proof that would trigger the trial justice's obligation to further inquire regarding what evidence defendant intended to present.

The majority also faults the trial justice for not probing further, in part, because defendant was *pro se*. Irrespective of his *pro se* status, defendant was "expected to familiarize himself * * * with the law as well as the rules of procedure." *Tyre v. Swain*, 946 A.2d 1189, 1202 (R.I. 2008) (quoting *Sentas v. Sentas*, 911 A.2d

266, 271 (R.I. 2006)). As such, it was incumbent upon defendant to request a sidebar conference and set forth the affirmative evidence he planned to present.

Finally, I pause to note that this Court has recognized that "[m]uch is expected of our trial justices[,]" but they will not be faulted "for a failure of clairvoyance." *State v. Bido*, 941 A.2d 822, 829 (R.I. 2008). Nor is the trial bench required to hold the hand of an obstreperous *pro se* litigant whose interest is showmanship in our courtrooms and not a search for the truth. The trial justice could not, nor was he under any obligation to, divine what evidence defendant intended to elicit through cross-examination. I am firmly convinced that the trial justice did not err in the circumstances of this case.

For the reasons set forth in this opinion, I respectfully dissent in this case. I would affirm the trial justice's decision in not allowing the defendant to make an opening statement, and would affirm the judgment of conviction.[2]

---

[2] As the majority did not reach the other issues presented on appeal and I am convinced that they were not preserved for appellate review, I too, shall not address them.



### STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Andrew Smith. |
| **Case Number** | No. 2018-64-C.A. <br> (P2/15-553A) |
| **Date Opinion Filed** | January 27, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State: <br><br> Owen Murphy <br> Department of Attorney General |
| | For Defendant: <br><br> Kara J. Maguire <br> Office of the Public Defender <br><br> Camille A. McKenna <br> Office of the Public Defender |